REVISED NOVEMBER 16, 2006

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

**October 31, 2006**

Charles R. Fulbruge III
Clerk

------

No. 05-40988

------

UNITED STATES of AMERICA,

                                        Plaintiff-Appellee,

        versus

EFREN VILLEGAS-HERNANDEZ,

                                        Defendant-Appellant.

------

Appeal from the United States District Court
for the Southern District of Texas

------

Before KING, GARWOOD, and JOLLY, Circuit Judges.

GARWOOD, Circuit Judge:

Defendant-Appellant Efren Villegas-Hernandez (Villegas-Hernandez) contends that the district court erred in applying an eight-level sentence enhancement because his prior Texas conviction for assault is not a "crime of violence" as defined for this purpose by the United States Sentencing Guidelines. We agree. Accordingly, we VACATE his sentence and REMAND for resentencing.

**FACTS AND PROCEEDINGS BELOW**

On October 25, 2004, Border Patrol agents found Villegas-Hernandez in Cameron County, Texas and determined him to be a citizen of Mexico who had entered the United States illegally. Villegas-Hernandez had been deported from the United States on May 13, 2003, after pleading guilty to assault in Texas state court.[1]

On February 23, 2005, Villegas-Hernandez pleaded guilty to violating 8 U.S.C. § 1326(a) and (b),[2] which proscribe knowingly

---

[1]On February 15, 2001, Villegas-Hernandez pleaded guilty to the offense of assault before the County Court at Law No. 3 of Cameron County, Texas. For this offense, he was sentenced to 12 months' confinement suspended for 18 months.

[2]Section 1326, "Reentry of removed aliens," states in pertinent part:
"(a) **In general**
Subject to subsection (b) of this section, any alien who—
>**(1)** has been denied admission, excluded, deported, or removed or has departed the United States while an order of exclusion, deportation, or removal is outstanding, and thereafter
>**(2)** enters, attempts to enter, or is at any time found in, the United States, unless (A) prior to his reembarkation at a place outside the United States or his application for admission from foreign contiguous territory, the Attorney General has expressly consented to such alien's reapplying for admission; or (B) with respect to an alien previously denied admission and removed, unless such alien shall establish that he was not required to obtain such advance consent under this chapter or any prior Act,
shall be fined under Title 18, or imprisoned not more than 2 years, or both.
(b) **Criminal penalties for reentry of certain removed aliens**
Notwithstanding subsection (a) of this section, in the case of any alien described in such subsection—

2

and unlawfully being present in the United States after having been "denied admission, excluded, deported, or removed" following certain convictions.

For violations within section 1326, sentencing guideline 2L1.2(b)(1)(C) provides for an eight-level enhancement if the

> **(1)** whose removal was subsequent to a conviction for commission of three or more misdemeanors involving drugs, crimes against the person, or both, or a felony (other than an aggravated felony), such alien shall be fined under Title 18, imprisoned not more than 10 years, or both;
> **(2)** whose removal was subsequent to a conviction for commission of an aggravated felony, such alien shall be fined under such Title, imprisoned not more than 20 years, or both;
> **(3)** who has been excluded from the United States pursuant to section 1225(c) of this title because the alien was excludable under section 1182(a)(3)(B) of this title or who has been removed from the United States pursuant to the provisions of subchapter V of this chapter, and who thereafter, without the permission of the Attorney General, enters the United States, or attempts to do so, shall be fined under Title 18 and imprisoned for a period of 10 years, which sentence shall not run concurrently with any other sentence. or
> **(4)** who was removed from the United States pursuant to section 1231(a)(4)(B) of this title who thereafter, without the permission of the Attorney General, enters, attempts to enter, or is at any time found in, the United States (unless the Attorney General has expressly consented to such alien's reentry) shall be fined under Title 18, imprisoned for not more than 10 years, or both.
> For the purposes of this subsection, the term 'removal' includes any agreement in which an alien stipulates to removal during (or not during) a criminal trial under either Federal or State law." 8 U.S.C. § 1326 (2000).

violation follows a conviction for an "aggravated felony."[3]
Application Note 3(A) for guideline 2L1.2 states that "[f]or
purposes of subsection (b)(1)(C), 'aggravated felony' has the
meaning given that term in section 101(a)(43) of the Immigration
and Nationality Act (8 U.S.C. § 1101(a)(43))." 8 U.S.C. §
1101(a)(43) in its various subparagraphs lists multiple offenses
that constitute an aggravated felony. The only one relevant to
this appeal is subparagraph (F), which provides that an aggravated
felony includes "a crime of violence (as defined in section 16 of

---

[3] U.S.S.G. § 2L1.2, "Unlawfully Entering or Remaining in the United States," states:
   "(a) Base Offense Level: **8**
   (b) Specific Offense Characteristic
        (1) Apply the Greatest:
        If the defendant previously was deported, or
        unlawfully remained in the United States, after—
            (A)  a conviction for a felony that is (i) a
                 drug trafficking offense for which the
                 sentence imposed exceeded 13 months;
                 (ii) a crime of violence; (iii) a
                 firearms offense; (iv) a child
                 pornography offense; (v) a national
                 security or terrorism offense; (vi) a
                 human trafficking offense; or (vii) an
                 alien smuggling offense, increase by **16**
                 levels;
            (B)  a conviction for a felony drug
                 trafficking offense for which the
                 sentence imposed was 13 months or less,
                 increase by **12** levels;
            (C)  a conviction for an aggravated felony,
                 increase by **8** levels;
            (D)  a conviction for any other felony,
                 increase by **4** levels; or
            (E)  three or more convictions for
                 misdemeanors that are crimes of violence
                 or drug trafficking offenses, increase
                 by **4** levels."  U.S.S.G. § 2L1.2 (2004).

4

Title 18, but not including a purely political offense) for which the term of imprisonment [is] at least one year."[4] 18 U.S.C. § 16 provides:

> "The term 'crime of violence' means—
>     **(a)** an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or
>     **(b)** any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." 18 U.S.C. § 16 (2000).

Citing guideline 2L1.2(b)(1)(C), the presentence report (PSR) recommended adding eight levels to Villegas-Hernandez's total offense level, based on categorizing Villegas-Hernandez's Texas assault conviction as an aggravated felony. Villegas-Hernandez objected to this treatment of his assault conviction and further objected that 8 U.S.C. § 1326 was facially unconstitutional. After two sentencing hearings addressing Villegas-Hernandez's concerns, the district court overruled his objections and adopted the PSR's enhancement recommendation, rendering Villegas-Hernandez's guideline total offense level thirteen[5] and range for imprisonment

---

[4]Under 8 U.S.C. § 1101(a)(48)(B) "any suspension of the imposition or execution of" the confinement or sentence, in whole or in part, is disregarded in determining whether the at least one year requirement is met.

[5]The offense level of thirteen was calculated as follows: The base offense level is eight. U.S.S.G. § 2L1.2(a). Eight levels were added as a result of categorizing Villegas-Hernandez's prior conviction as an aggravated felony, resulting in an adjusted offense level of sixteen. *See* U.S.S.G. § 2L1.2(b)(1)(C). Two levels were subtracted for the

eighteen to twenty-four months.

On June 23, 2005, the district court sentenced Villegas-Hernandez to twenty-one months of imprisonment and three years of supervised release.

**DISCUSSION**

I.

Villegas-Hernandez, in his timely appeal, argues that the district court erred in treating his Texas assault conviction as an "aggravated felony" under U.S.S.G. § 2L1.2(b)(1)(C) because the Texas assault offense for which he was convicted is not a "crime of violence" as defined by 18 U.S.C. § 16, and therefore is not an "aggravated felony" under 8 U.S.C. § 1101(a)(43)(F). Subsections 16(a) and 16(b) offer alternative definitions for crime of violence. Thus, the propriety of Villegas-Hernandez's sentence enhancement turns on whether his Texas conviction for assault meets either the definition of crime of violence in subsection 16(a) or the definition in subsection 16(b). We discuss each of these provisions in turn.

*A. 18 U.S.C. § 16(a)*

The Texas assault conviction constitutes a crime of violence under subsection 16(a) if it "has as an element the use, attempted

---

defendant–appellant's acceptance of responsibility, per U.S.S.G. § 3E1.1(a). On the government's motion, Villegas-Hernandez's offense level was decreased by one additional level, pursuant to U.S.S.G. § 3E1.1(b), leaving Villegas-Hernandez with a total offense level of thirteen.

use, or threatened use of physical force against the person or property of another."  When deciding whether a prior conviction is a crime of violence because it has as an element the use of force, we use the categorical approach established in *Taylor v. United States*, 495 U.S. 575, 602, 110 S.Ct. 2143 (1990). *United States v. Bonilla-Mungia*, 422 F.3d 316, 320 (5th Cir. 2005).  Under that approach, this court must analyze an offense's statutory definition and not the defendant's underlying conduct.  *Id*.

Villegas-Hernandez's prior conviction was under Texas Penal Code § 22.01(a), which provides:

> "A person commits an offense if the person:
> (1) intentionally, knowingly, or recklessly causes bodily injury to another, including the person's spouse;
> (2) intentionally or knowingly threatens another with imminent bodily injury, including the person's spouse; or
> (3) intentionally or knowingly causes physical contact with another when the person knows or should reasonably believe that the other will regard the contact as offensive or provocative."  TEX. PEN. CODE ANN. § 22.01(a) (Vernon 2003).

Both Villegas-Hernandez and the government agree that 22.01(a)(1) of the Texas Penal Code, a Class A misdemeanor, constitutes the relevant assault definition in this case.  To convict under 22.01(a)(1), the government must prove that the defendant "intentionally, knowingly, or recklessly cause[d] bodily injury to another . . . ."  The government contends that 22.01(a)(1)'s requirement that a defendant cause bodily injury incorporates a requirement to show the intentional use of force, such that Villegas-Hernandez's prior assault conviction satisfies 16(a)'s

7

definition of crime of violence.  We disagree for the following reasons.

First, as we have previously explained in relation to 16(b), the term "force" has a specific meaning and, when "used in the statutory definition of a 'crime of violence,' is 'synonymous with destructive or violent force.'" *United States v. Landeros-Gonzales*, 262 F.3d 424, 426 (5th Cir. 2001) (quoting *United States v. Rodriquez-Guzman*, 56 F.3d 18, 20 n.8 (5th Cir. 1995), which explained that, in the context of burglary, force means "more than the mere asportation of some property of the victim").

Second, under 16(a)'s clear language, use of force must be "an element" of the offense, another term for which we have previously delineated a specific meaning:

> "In our current legal terminology, an element is '[a] constituent part of a claim that must be proved for the claim to succeed.' Black's Law Dictionary 538 (7th ed. 1999). . . . If any set of facts would support a conviction without proof of that component, then the component most decidedly is not an element—implicit or explicit—of the crime." *United States v. Vargas-Duran*, 356 F.3d 598, 605 (5th Cir. 2004) (en banc).

Thus, an assault offense under section 22.01(a)(1) satisfies subsection 16(a)'s definition of a crime of violence only if a conviction for that offense could not be sustained without proof of the use of "destructive or violent" force.

The bodily injury required by section 22.01(a)(1) is "physical pain, illness, or any impairment of physical condition." TEX. PEN. CODE ANN. § 1.07(a)(8).  Such injury could result from any of a

8

number of acts, without use of "destructive or violent force"; for example, making available to the victim a poisoned drink while reassuring him the drink is safe, or telling the victim he can safely back his car out while knowing an approaching car driven by an independently acting third party will hit the victim. To convict a defendant under any of these scenarios, the government would not need to show the defendant used physical force against the person or property of another. Thus, use of force is not an element of assault under section 22.01(a)(1), and the assault offense does not fit subsection 16(a)'s definition for crime of violence.[6]

---

[6]We recognize that our understanding of the term "use of force" as it appears in subsection 16(a) assigns that term a definition less expansive, and less directly connected to the defendant, than perhaps it arguably could be. See, for example, the following from one of the dissenting opinions in *United States v. Calderon-Pena*, 383 F.3d 254, 270 (5th Cir. 2004) (per curiam):

> "[T]he 'use of physical force' and 'attempted use of physical force' under the crime-of-violence guideline should extend to cover those applications of force that are subtle or indirect . . . .
>
> If a someone lures a poor swimmer into waters with a strong undertow in order that he drown, or tricks a victim into walking toward a high precipice so that he might fall . . . the perpetrator has at least attempted to make use of physical force . . ., either through the action of water to cause asphyxiation or by impact of earth on flesh and bone. However remote these forces may be in time or distance from the defendant, they were still directed to work according to his will, as surely as was a swung fist or a fired bullet.
>
> . . . [B]atteries and assaults punishable under . . . statutes can involve uses or attempted uses of physical force that are subtle or indirect. For example, a person may be indicted and convicted for Texas assault if he 'intentionally . . . causes bodily injury to another, including the person's spouse.'"

This court had previously held that an assault offense under section 22.01(a)(1) "has, as an element, the use . . . of physical force" under 18 U.S.C. § 921(a)(33)(A)(ii) so as to meet that section's definition of "misdemeanor crime of domestic violence" and thus constitute a predicate offense for purposes of 18 U.S.C. § 922(g)(9). *See United States v. Shelton*, 325 F.3d 553, 557, 561 (5th Cir. 2003) (stating that "because" Texas Penal Code § 22.01(a)(1) "requires bodily injury it includes as an element the use of physical force"). In *Shelton*, a panel of this court relied largely on the panel opinion in *United States v. Vargas-Duran*, 319 F.3d 194 (5th Cir. 2003). *Shelton*, 325 F.3d at 558, 561.[7] The

Tex. Penal Code Ann. § 22.01(a)(1) (Vernon 2003). The bodily injury need not result from a violent physical contact between the defendant and the victims; subtle or indirect means would do, whether by tricking a person into consuming poison, or luring him to walk off a cliff. . . ." *United States v. Calderon-Pena*, 383 F.3d 254, 270 (5th Cir. 2004) (per curiam).

We conclude that such an expansive view of "use of force" for purposes of § 16(a), which the government does not argue for here, was at least implicitly rejected by the en banc court in *Calderon-Pena* in its construction of the definition of "crime of violence" provided (in language almost identical to that of § (16)(a)) in paragraph (I) of comment n.1(B)(ii) to § 2L1.2 of the 2001 Guidelines. *See Calderon-Pena* at 256, 257, 259-60.

[7]See *Shelton* at 558 ("Applying the analysis of *Vargas-Duran* to the case at bar, it appears that the 'bodily injury' element of Shelton's predicate [§ 22.01(a)(1)] offense would also encompass a requirement that Shelton used force to cause the injury"), and at 561 (relying on *Vargas-Duran*'s "rejecting argument that a defendant could be convicted of Texas offense of intoxicated assault for causing serious bodily injury without using physical force;" and, also relying on "our analogous reasoning in *Vargas-Duran*" to "hold that because Shelton's

10

*Vargas-Duran* panel had concluded that Texas's intoxication assault offense, Texas Penal Code § 49.07,[8] included use of force as an element by virtue of its requirement of causation of serious bodily injury and was hence a crime of violence under U.S.S.G. (2001) § 2l.1.2(b)(1)(A)(ii), note 1(B)(ii)(I) (stating definition almost identical to section 16(a)). *Vargas-Duran*, 319 F.3d at 196. After *Shelton*, however, *Vargas-Duran* was taken en banc. 336 F.3d 418 (5th Cir. 2003). In the *en banc* opinion we held the opposite namely:

> "There is . . . a difference between a defendant's causation of an injury and the defendant's use of force. Consequently, Vargas-Duran's use of force was simply not a fact necessary to support his conviction for intoxication assault. *Vargas-Duran*, 356 F.3d 598, 606

---

predicate offense of misdemeanor assault requires bodily injury it includes as an element the use of physical force").

The *Vargas-Duran* panel opinion is the only sentencing guidelines (or § 16) case, and also the only Fifth Circuit case, on which *Shelton* relies to support its holding. *Shelton* does rely on the decisions in *United States v. Nason*, 269 F.3d 10 (1st Cir. 2001), and *United States v. Smith*, 171 F.3d 617 (8th Cir. 1999), that the Maine assault statute (proscribing intentionally causing bodily injury or offensive physical conduct to another) and the Iowa assault statute (prohibiting an act intended to cause pain, injury or offensive or insulting physical contact), respectively, met the "has, as an element, the use or attempted use of physical force" definition in 18 U.S.C. § 921(a)(33)(A)(ii) so as to qualify as "crime of domestic violence" under 18 U.S.C. § 922(g)(9).

[8]Section 49.07 of the Texas Penal Code, at the time of the defendant's conviction in *Vargas-Duran*, stated that "a defendant is guilty of a third degree felony if he or she 'by accident or mistake, while operating an aircraft, watercraft, or motor vehicle in a public place while intoxicated, by reason of that intoxication cause[d] serious bodily injury to another." *Vargas Duran*, 319 F.3d at 196 n.3 (quoting TEX. PEN. CODE ANN. § 49.07 (Vernon 1994)).

11

(5th Cir. 2004).

Moreover, in *Vargas-Duran* the *en banc* court, *id*. at 305 n.10, specifically cited with approval, as supporting its "ruling on the 'element requirement' of" section 2L1.2(b)(1)(A)(ii), note 1(B)(ii)(I), the Second Circuit's decision in *Chrzanoski v. Ashcroft*, 327 F.3d 188 (2d Cir. 2003), holding that the offense of assault in the third degree under Connecticut General Statutes § 53a-61(a)(1) was *not* a crime of violence under section 16(a). The Connecticut statute provided that "A person is guilty of assault in the third degree when (1) with intent to cause physical injury to another person, he causes such injury to such person or to a third person." With respect to whether under the statute use of physical force against the person of another is an element of the offense, the Connecticut statute is not materially different from Texas Penal Code § 22.01(a) at issue here.[9] The *Chrzanoski* Court recognized, as the en banc court did in *Vargas-Duran*, that for purposes of section 16(a) "[a]n element of a crime is a fact that must be proven beyond a reasonable doubt to obtain a conviction." *Chrzanoski* at 192. *Chrzanoski* specifically considered and rejected the government's

---

[9]With respect to whether use of force is an element of the offense there appears to be no material difference between the "physical injury" provision of the Connecticut statute (defined "as 'impairment of physical condition or pain' Conn. Gen. Stat. § 53-3(3)"; *Chrzanoski* at 193) and the "bodily injury" provision of the Texas statute, which Tex. Pen. Code § 1.07(8) defines as meaning "physical pain, illness, or any impairment of physical condition."

12

argument "that force is implicit in the statute's requirement of intentional causation of physical injury," *id*. at 193, and held instead that "the intentional causation of injury does not necessarily involve the use of force." *Id*. at 195. The en banc court in *Vargas-Duran* specifically stated its agreement with that holding of *Chrzanoski*,[10] and went on to hold, 356 F.3d at 606, that the defendant's "use of force was simply not a fact necessary to support his conviction" for violating the statute (which required that his conduct "cause serious bodily injury to another," Tex. Pen. Code § 49.07).

*Chrzanoski*'s analysis of the ways in which the Connecticut third degree assault statute could be violated without the defendant's use of force are likewise fully applicable to Tex. Pen. Code § 22.01(a)(1), viz:

> "Given the elements of section 53a-61(a)(1) under Connecticut law, it seems an individual could be convicted of intentional assault in the third degree for injury caused not by physical force, but by guile, deception, or even deliberate omission. . . . Moreover, human experience suggests numerous examples of intentionally causing physical injury without the use of force, such as a doctor who deliberately withholds vital

---

[10]*See Vargas-Duran*, 356 F.3d at 605 n.10:
"In *Chrzanoski*, the Government argued that, while the state statute in question did not expressly identify 'the use, attempted use, or threatened use' of physical force as an element, it was implicit in the statute's requirement, that physical injury be caused. *Id*. at 193. The Second Circuit rejected the Government's argument and concluded that there was a difference between the use of force and the causation of injury. *Id*. at 194. *We agree*." (emphasis added).

13

medicine from a sick patient.  In sum, while there are undoubtedly many ways in which force could be used to commit third degree assault under Connecticut law, the plain language of the statute does not make use of force an explicit or implicit element of the crime.  Rather, its language is broad enough to cover myriad other schemes, not involving force, whereby physical injury can be caused intentionally."  *Id*., 327 F.3d at 195-96.[11]

In *United States v. Calderon-Pena*, 383 F.3d 254, 260 (5th Cir. 2004), the en banc court reaffirmed the *Vargas-Duran* en banc holding that for purposes of the "has as an element the use . . . of physical force" language of U.S.S.G. § 2L1.2, Application Note 1(B)(ii)(I) (2001), "if any set of facts would support a conviction without proof of that component, then the component most decidedly is not an element – implicit or explicit – of the crime."

Because the en banc opinion in *Vargas-Duran* comes after *Shelton*, which is itself a panel opinion, and because of *Shelton*'s heavy reliance on the panel opinion in *Vargas-Duran* which was later reversed en banc, we feel compelled to decide whether Tex. Pen. Code § 22.01(a)(1) "has as an element the use, attempted use, or threatened use of physical force against the person or property of another" within the meaning of section 16(a) on the basis of the principles set down in *Vargas-Duran* and *Calderon-Pena* rather than in reliance on *Shelton*.  On this basis we conclude that although section 22.01(a)(1) requires that the defendant "intentionally,

_____

[11]We also observe that *Chrzanoski* specifically did "not find . . . persuasive" in the present context the *Nason* and *Smith* cases by the First and Eighth Circuits on which *Shelton* relied (see note 7 *supra*).  *See Chrzanoski*, 327 F.3d at 193 n.9.

14

knowingly, or recklessly cause[s] bodily injury to another," that section may be violated by the defendant so causing such injury by means *other than* the actual, attempted, or threatened "use of physical force against the person of another," and hence does not have such use of force as an element and does not fall within section 16(a).[12]

In addition to its reliance on *Shelton*, the government leans heavily on the district court's finding of family violence and the conduct underlying Villegas-Hernandez's conviction to support its claim that the prior assault conviction is a crime of violence under

---

[12]*See also, e.g., United States v. Perez-Vargas*, 414 F.3d 1282, 1285-87 (10th Cir. 2005) (Colorado third degree assault statute denouncing one who "knowingly or recklessly causes bodily injury to another" does not have "as an element" the use of physical force against the person of another so as to be a crime of violence under U.S.S.G. § 2L1.2, Application Note 1(B)(iii); relying on, *inter alia*, *Chrzanoski*); *United States v. Fierro-Reyna*, 466 F.3d 324, 326, (5th Cir. 2006), stating that the 1974 Texas simple assault statute (Tex. Pen. Code 1974 § 22.01; identical to the current § 22.01(a)(1) except for the current version's addition of "including the person's spouse") "did not have use of force as an element."

The government relies on our unpublished summary calendar opinion in *United States v. Ramirez-Aguilar*, No. 04-41150, 2006 WL 684433 (5th Cir. March 17, 2006) (per curiam), in which we stated "conviction under [Tex. Pen. Code] § 22.01(a)(1) is a crime of violence sufficient to trigger the § 2L1.2(b)(1)(C) enhancement," citing *Shelton* but not *Vargas-Duran* or any other authority and without any supporting reasoning or discussion. Our ultimate holding in *Ramirez-Aguilar* was to remand the case for further findings as to which subsection of § 22.01 the conviction was under. Under 5th Cir. R. 47.5.4 *Ramirez-Aguilar*, as an unpublished opinion issued after January 1, 1996, is not precedential, and we decline to follow its quoted statement concerning § 22.01(a)(1).

15

subsection 16(a).  The government quotes the information charging

Villegas-Hernandez:

> "[O]n or about the 9TH day of OCTOBER, A.D. 2000, and
> before the making and filing of this Information, in
> Cameron County, Texas, EFREN HERNANDEZ VILLEGAS, the
> Defendant, did then and there unlawfully, intentionally,
> knowingly, or recklessly cause bodily injury to another,
> namely, ADRIANA HERNANDEZ, a family member, by HITTING
> ADRIANA HERNANDEZ WITH DEFENDANT'S HAND AND/OR KICKING
> ADRIANA HERNANDEZ WITH DEFENDANT'S FOOT."

In his plea colloquy, Villegas-Hernandez admitted hitting his wife,

although he neither denied nor admitted kicking her.

Under the categorical approach described above, however,

conduct underlying an offense may not be employed to meet the

definition of crime of violence under subsection 16(a).

Accordingly, the government may not rely for this purpose on facts

alleged in an indictment or information.  This court clarified this

matter in *United States v. Calderon-Pena*, where we considered

whether the Texas child endangerment offense included use of force

as an element:

> "Although the actual conduct described in the indictments
> could be construed to involve the use of physical force
> against the person of another, that is irrelevant for
> purposes of this case.  The inquiry under paragraph (I)
> looks to the *elements* of the crime, not to the
> defendant's actual conduct in committing it.  This rule
> springs directly from the language of the 'crime of
> violence' definition itself, which states that a 'crime
> of violence' is an offense that 'has as an *element*' the
> use of force."  383 F.3d at 257.

We further noted that "under Texas law, the manner and means, even

when required to be charged in the indictment, does not constitute

16

an element of the offense." *Id*. at 258. Rather, inclusion of manner and means serves to satisfy due process concerns related to adequately notifying defendants. *Id*. Thus, if statutory language is wholly result-oriented, as here, an offense is not a crime of violence under subsection 16(a) simply because an indictment or information describes force being used in a particular commission of that offense.[13] We do not say here that an indictment is always off-limits; a charging instrument may appropriately be referenced in order to determine which of several statutorily specified or

_____

[13]The government's reliance on the state trial court having stated "I will make an affirmative finding of family violence" is misplaced. That finding, as the government recognizes, was obviously made pursuant to Tex. Code Crim. P. art. 42.013 (first enacted in 1993) which provides that: "in the trial of an offense under Title 5 [which includes § 22.01], Penal Code, if the court determines that the offense involved family violence, as defined by Section 71.004, Family Code, the court shall make an affirmative finding of that fact . . ." Clearly this provision of the Texas Code of Criminal *Procedure* does not add any *element* to any of the offenses denounced in the *Penal Code*. The Penal Code does provide, in § 22.01(b)(2), that if the victim of an offense under § 22.01(a) is a family member, and if the defendant has previously been convicted of any offense under Chapter 22 (or various other chapters) of the Penal Code in which the victim was a family member, then the § 22.01 offense is a third degree felony. As the court said in *State v. Eakins*, 71 S.W.3d 443, 444 (Tex. App.–Austin 2002; no writ), "Article 42.013 was obviously intended to simplify the prosecution of subsequent family assault cases . . . . The state may rely on the affirmative finding in the prior judgment to prove that the victim of the defendant's previous assault was a family member."
Moreover, Section 71.004(1) of the Family Code, to which Article 42.013 refers, speaks of conduct intended to "*result in* physical harm, bodily injury, assault, or sexual assault" (emphasis added) and not to the means used – whether physical force against the person or other means – to produce such a result.

17

referenced methods of committing an offense (or statutory subdivisions containing different offense definitions or elements) are involved in a given case. *See id*. at 258.

*B. 18 U.S.C. § 16(b)*

Subsection 16(b) defines crime of violence as "any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." 18 U.S.C. § 16(b). Subsection 16(b) expressly pertains *only* to felonies. Therefore, Villegas-Hernandez's assault conviction is a crime of violence as that term is defined by 16(b) *only* if it constitutes a felony. Because the offense described in Texas Penal Code § 22.01(a)(1) cannot be classified as a felony under either state or federal law, we hold that Villegas-Hernandez's prior conviction does not satisfy 16(b)'s definition for crime of violence.[14]

Texas law specifically categorizes an assault under § 22.01(a)(1) as a Class A misdemeanor, which may be punished by imprisonment for not more than one year. *See* TEX. PEN. CODE ANN. § 22.01(b) (Vernon 2003) (classifying assault under section 22.01(a)(1) as a Class A misdemeanor); *id*. § 12.21 (Class A misdemeanors are punishable by up to one year in prison). Federal

---

[14]Whether it would do so were it a felony we need not and do not address.

18

law, in turn, makes clear that the lowest class of felony within the federal system must be punishable by more than one year. 18 U.S.C. § 3559(a)(5) (2000) (defining a Class E felony). As such, neither Texas nor federal law permits us to categorize Villegas-Hernandez's assault conviction as a felony.

The government argues that, while the default federal definition of a felony is, as noted above, an offense punishable by more than one year, in this case, assault under 22.01(a)(1) is a felony under federal law because 8 U.S.C. § 1101(a)(43)(F) defines aggravated felony for the purposes of guideline 2L1.2(b)(1)(C) as "a crime of violence (as defined in section 16 of Title 18 . . .) for which the term of imprisonment [is] at least one year." We find this argument unpersuasive.

8 U.S.C. § 1101(a)(43)(F)'s definition of "aggravated felony" has *two* requirements: *First*, that the offense meet either of section 16's alternative definitions of crime of violence; and *second*, that the offense's imprisonment term is at least one year. The government's argument conflates the second requirement with the separate requirements of section 16 itself, which must be independently satisfied.

An offense can meet 16(a)'s definition—and therefore constitute an "aggravated felony" under 1101(a)(43)(F)—regardless of whether it is considered a felony under state or federal law. This is consistent with this court's decision in *United States v. Urias-*

19

*Escobar*, 281 F.3d 165 (5th Cir. 2002), where we held that although a prior conviction was labeled as a misdemeanor by state law, it could still be considered an "aggravated felony" under U.S.S.G. 2L1.2. If the offense meets 16(a)'s definition of crime of violence, section 1101(a)(43)(F) *still* requires that it have at least a one-year imprisonment term. If that second, imprisonment-term requirement is met, the offense will be an "aggravated felony" regardless of alternative definitions of "felony."

If an offense does not meet the requirements of 16(a), however, *then* it must satisfy 16(b). In 16(b), whether the offense is a felony under state or federal law matters. This is separate from section 1101(a)(43)(F)'s second requirement of at least a one-year imprisonment term.

Because assault under Texas Penal Code § 22.01(a)(1) cannot be described as a felony under either Texas or federal law, we do not address whether subsection 16(b)'s requirement that an offense be a felony looks to federal or state law definitions of felony. Accordingly, this case is distinguishable from *Francis v. Reno*, 269 F.3d 162 (3d Cir. 2001). In that case, the Third Circuit was forced to determine whether a conviction for vehicular homicide, labeled as a misdemeanor by Pennsylvania law but punishable by more than one year and therefore within the federal default definition of a felony, satisfied section 16's definition of crime of violence. *See id*. at 169 (noting that the defendant–appellant's prior conviction

was "only arguably a felony because of the application of 18 U.S.C. § 3559").

*C. Prejudicial Error*

Villegas-Hernandez's prior conviction was not a felony under either state or federal law, and it therefore may not be considered a "crime of violence" as defined in subsection 16(b). Nor does his assault conviction constitute a crime of violence under subsection 16(a), because 22.01(a)(1) does not include use of force as an element. Consequently, Villegas-Hernandez's prior conviction was not an "aggravated felony" under guideline 2L1.2(b)(1)(C), and it was error to apply an eight-level enhancement under that guideline. Villegas-Hernandez preserved this error by objecting at trial.

Without the improper eight-level enhancement, Villegas-Hernandez would have had a total offense level of six,[15] which combined with a criminal history category III, would have led to a two to eight month guideline sentence range. *See* U.S.S.G. Ch. 5, Pt. A, Sentencing Table. This suffices to show prejudicial error.

Under *United States v. Booker*, 125 S.Ct. 738 (2005), the guidelines are advisory but not mandatory. This court has held that a district court must nevertheless determine what the appropriate guideline sentence range would be. *United States v. Smith*, 440 F.3d 704, 707 (5th Cir. 2006). If the district court wishes to deviate

---

[15]The base level of eight, less two levels for Villegas-Hernandez's acceptance of responsibility.

21

from that calculated sentence range, it must explain why.  As the government concedes, if this court finds the sentencing guideline enhancement constituted error, it must remand Villegas-Hernandez to the district court for resentencing.  And this is what we now do.

II.

Villegas-Hernandez also challenges the constitutionality of the "felony" and "aggravated felony" sentencing provisions of 8 U.S.C. § 1326(b)(1) and (2).  He argues that statutory provisions 8 U.S.C. § 1326(b)(1) and (2) are unconstitutional under *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and should be severed from the statute, requiring his conviction to be reduced to conform with the remaining provision, 8 U.S.C. § 1326(a).  His sentence would thus need to be vacated, he argues, and the case remanded for resentencing to no more than one year of supervised release.  As we have previously stated, and as the appellant recognizes, this court continues to be bound by the *Almendarez-Torres* decision.  *United States v. Bonilla-Mungia*, 422 F.3d 316, 318-19 (5th Cir. 2005).  We reject this claim of error.

**CONCLUSION**

We VACATE the defendant-appellant's sentence and REMAND for resentencing.

VACATED and REMANDED.

22