# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 12-40838

United States Court of Appeals
Fifth Circuit

**FILED**

January 10, 2014

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff-Appellee

v.

SERGIO CALZADA-ORTEGA,

Defendant-Appellant

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 2:12-CR-253-1

Before JOLLY, HIGGINBOTHAM, and SOUTHWICK, Circuit Judges.

PER CURIAM:*

Sergio Calzada-Ortega pled guilty to being found unlawfully present in the United States following deportation in violation of 8 U.S.C. § 1326(a) and (b). At sentencing, Calzada's offense level was increased by 16 levels based on a prior Wisconsin conviction for substantial battery the district court concluded constituted a crime of violence. U.S.S.G. § 2L1.2(b)(1)(A)(ii). Calzada challenges the 16-level enhancement, arguing his prior Wisconsin conviction does not constitute a crime of violence under the Sentencing

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 12-40838

Guidelines. We agree and therefore VACATE the sentence and REMAND for resentencing.

FACTS AND PROCEDURAL HISTORY

Calzada was sentenced following a guilty plea to being unlawfully present in the United States following deportation. 8 U.S.C. § 1326(a), (b). The presentence report (PSR) recommended that Calzada's base offense level of eight be increased by 16 levels based on a prior Wisconsin state court conviction for "substantial battery – intend bodily harm," and concluded that it was a crime of violence. U.S.S.G. § 2L1.2(b)(1)(A)(ii). The PSR also recommended he receive a three-level reduction for acceptance of responsibility, resulting in a total offense level of 21. The recommended criminal history score placed him in a criminal history category of III, producing a sentencing guidelines range of 46-57 months. Calzada filed an objection to the 16-level enhancement, arguing that his conviction for substantial battery in Wisconsin did not meet the definition of a crime of violence. The district court overruled the objection and imposed a bottom-of-the-guidelines sentence of 46 months. Calzada filed a timely notice of appeal.

DISCUSSION

In illegal reentry cases, Section 2L1.2(b)(1)(A)(ii) of the Sentencing Guidelines provides for a 16-level increase to a defendant's base offense level when the defendant was previously deported following a conviction for a felony that constitutes a crime of violence. An offense qualifies as a crime of violence if it either falls under one of the enumerated offenses, or the residual clause as an offense that has as an element the use, attempted use, or threatened use of physical force. U.S.S.G. § 2L1.2 cmt. n.1(B)(iii). Different tests are used to determine whether a specific offense amounts to a crime of violence depending on whether the offense is an enumerated one, or has the use of physical force

2

as an element.  *United States v. Esparza-Perez*, 681 F.3d 228, 229 (5th Cir. 2012).  The district court's characterization of a prior offense as a crime of violence is a question of law that we review *de novo*.  *Id.*

I.     *Crime of Violence Enhancement*

Calzada's prior conviction arose under Wisconsin Statute § 940.19(2).  It provides that "[w]hoever causes substantial bodily harm to another by an act done with intent to cause bodily harm to that person or another is guilty of a Class I felony."  In overruling Calzada's objection to the 16-level enhancement, the district court relied on a Seventh Circuit opinion that the same Wisconsin provision was a crime of violence under Section 4B1.2(a) of the Sentencing Guidelines.  *See United States v. Peters*, 462 F.3d 716 (7th Cir. 2006).  The definition of a crime of violence in Section 4B1.2(a) is broader than the definition in Section 2L1.2 because in addition to offenses with the use of physical force as an element, it includes an offense that "involves conduct that presents a serious potential risk of physical injury to another."  U.S.S.G. § 4B1.2(a)(2).  The court in *Peters* did not specify whether it considered the Wisconsin offense a crime of violence under the use of physical force definition also found in Section 2L1.2, or the additional definition only found in Section 4B1.2.  *Peters*, 462 F.3d at 719-20.  Thus, *Peters* does not resolve our issue, which is whether the Wisconsin offense of substantial battery is a crime of violence pursuant to Section 2L1.2.

a. *Use of physical force clause*

Calzada argues his Wisconsin conviction is not a crime of violence under the use of physical force clause because it does not include "as an element the use, attempted use, or threatened use of physical force against the person of another."  *See* U.S.S.G § 2L1.2 cmt. n.1(B)(iii).  We have concluded that a similar Texas assault statute was not a crime of violence under the use of physical force clause because it merely required that the defendant cause

3

bodily injury to another.  *See United States v. Villegas-Hernandez*, 468 F.3d 874, 882 (5th Cir. 2006).  We concluded that the Texas offense could be violated by means other than the actual, attempted, or threatened use of physical force.  *Id.* at 887.  The Wisconsin statute likewise requires causing substantial bodily harm to another, which may occur from acts other than the use of physical force.  Because Calzada could be convicted under the Wisconsin statute for causing substantial bodily harm without the use of physical force, his prior offense is not a crime of violence under § 2L1.2's use of force clause.

### b. *Enumerated offense*

The Guidelines do not define the enumerated offenses constituting crimes of violence.  This court has adopted "a common sense approach, defining each crime by its generic, contemporary meaning." *United States v. Martinez-Flores*, 720 F.3d 293, 295 (5th Cir. 2013) (quotation marks omitted).  This approach looks to the Model Penal Code, treatises, modern state codes, and dictionary definitions.  *Esparza-Perez*, 681 F.3d at 229.  "When comparing the state conviction with the generic, contemporary meaning of the crime, we examine the elements of the statute of conviction rather than the specifics of the defendant's conduct." *Id.* at 230 (citation omitted).  Finally, we focus on the minimum conduct criminalized by the state statute in determining whether a prior conviction qualifies as an aggravated felony. *Moncrieffe v. Holder*, 133 S. Ct. 1678, 1684 (2013).

The government argues Calzada's offense qualifies as the enumerated offense of aggravated assault.  It contends that the modifier "substantial" implies a degree of injury sufficiently close to the generic definition of aggravated assault as to be equivalent to the enumerated offense.  One generic definition of aggravated assault is in the Model Penal Code.  It provides that a person commits the offense when he "attempts to cause serious bodily injury to another, or causes such injury purposely, knowingly, or recklessly under

circumstances manifesting extreme indifference to the value of human life . . . ." MODEL PENAL CODE § 211.1(2)(a).  Serious bodily injury is defined as injury "which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." *Id.* § 210.0(3).

Wisconsin has a graduated scale of battery offenses beginning with bodily harm battery, proceeding to substantial bodily harm battery, and escalating to great bodily harm battery.  *See* WIS. STAT. § 940.19.   He argues that his conviction for the intermediate offense of substantial bodily harm battery requires a lesser injury than aggravated assault, taking it out of the common sense definition of aggravated assault.  Substantial bodily harm is defined as "bodily injury that causes a laceration that requires stitches, staples, or a tissue adhesive; any fracture of a bone; a broken nose; a burn; a petechia; a temporary loss of consciousness, sight or hearing; a concussion; or a loss or fracture of a tooth."  WIS. STAT. § 939.22(38).  Great bodily harm battery in Wisconsin, much like the generic definition of aggravated assault, involves injuries that create a substantial risk of death or cause serious permanent disfigurement or permanent or protracted loss of a bodily function. *See* WIS. STAT. § 940.19(4); § 939.22(14).  Calzada argues that the statutory difference in Wisconsin between substantial and serious bodily injury is enough to take his conviction out of the common sense definition of aggravated assault.

We have evaluated a similar statutory scheme in New Jersey where assault is differently punished based on gradations of injury.  *See Martinez-Flores*, 720 F.3d at 295.  Martinez-Flores was convicted under New Jersey law of a third degree offense for causing "significant bodily injury," defined as "injury which creates a temporary loss of the function of any bodily member or organ or temporary loss of any one of the five senses."  *Id.* at 296 (quoting N.J.

STAT. ANN. § 2C:11-1d).  The New Jersey statute also provided for second degree aggravated assault involving "serious bodily injury," defined as injury which creates "a substantial risk of death or which causes serious, permanent disfigurement, or a protracted loss or impairment of any function of the body member or organ." *Id.* (quoting N.J. STAT. ANN. §2C:12-1b(1)).  We determined that the intermediate level of assault in New Jersey was intended to include offenses greater than simple assault, but causing less than the injury required for aggravated assault.  *Id.* at 298.  The difference between significant and serious bodily injury in New Jersey was enough to remove Martinez-Flores's offense from the common sense definition of aggravated assault.  *Id.* at 297-98.

Similarly, Calzada was convicted of an intermediate battery offense involving a degree of harm less than serious bodily injury.  The Wisconsin statute is drafted, like New Jersey, to include graduated offenses of battery making distinctions between substantial and great bodily harm based on the nature, extent, and duration of the injury inflicted.  *See id.* at 298.  Important to whether an offense constitutes aggravated assault is whether it includes "the two most common aggravating factors — causation of serious bodily injury and use of a deadly weapon." *Id.* at 298.  Substantial battery involves non-permanent injuries that do not create a substantial risk of death, meaning it lacks the important aggravating factor of serious bodily injury.  *Id.* at 298-99 (citing BLACK'S LAW DICTIONARY 130 (9th ed. 2009)).  Focusing on the minimum conduct criminalized by the Wisconsin statute, substantial battery does not fall within the common sense meaning of aggravated assault.  *See id.* at 299 (citing *Moncrieffe*, 133 S. Ct. at 1684).  It was error for the district court to impose the 16-level crime of violence enhancement.

No. 12-40838

*II.    Harmless Error*

The Government did not argue that error, if it occurred, was harmless. Nevertheless, having concluded that an error occurred, we will consider its harmfulness. To prove harmless error, the Government must prove both "(1) that the district court would have imposed the same sentence had it not made the error, and (2) that it would have done so for the same reasons it gave at the prior sentencing." *United States v. Ibarra-Luna*, 628 F.3d 712, 714 (5th Cir. 2010). Calzada received a 46 month sentence with the 16-level enhancement. Absent the 16-level enhancement, his total offense level would have been 13, with a 21-27 month sentencing range. At the very least, the 16-level enhancement provided for a sentence increased by 19 months.

The district court did not state that it would impose the same sentence absent the 16-level crime of violence enhancement, and the Government does not contend the court would have imposed the same sentence if there had been no error in calculating the guidelines range. Thus, the error cannot be deemed harmless. *See Martinez-Flores*, 720 F.3d at 300-01.

Accordingly, we VACATE the judgment of sentence and REMAND for resentencing.