# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 16-20191
Conference Calendar

United States Court of Appeals
Fifth Circuit

**FILED**
May 6, 2019

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

      Plaintiff - Appellee

v.

ALBIN ALEXANDER TORRES, also known as Alvin Alexander Torres, also known as Albin Alexander Torres-Menjivar, also known as Albin Torres-Menjybar,

      Defendant - Appellant

Appeal from the United States District Court
for the Southern District of Texas

ON REMAND FROM THE SUPREME COURT OF THE UNITED STATES

Before JOLLY, SOUTHWICK, and OLDHAM, Circuit Judges.

LESLIE H. SOUTHWICK:

In 2017, we summarily affirmed the defendant's sentence for his conviction of an illegal reentry subsequent to a deportation. We relied on Fifth Circuit precedent that his prior Texas aggravated assault conviction was a crime of violence under 18 U.S.C. § 16(b), which permitted a higher maximum sentence for his illegal reentry. The Supreme Court granted the defendant's petition for writ of certiorari, vacated our decision, and remanded for us to consider the effect of that Court's decision that Section 16(b) was

No. 16-20191

unconstitutionally vague.  Consideration given, we conclude the prior state conviction is a crime of violence under Section 16(a).  AFFIRMED.

FACTUAL AND PROCEDURAL BACKGROUND

In December 2015, Albin Alexander Torres pled guilty to violating 8 U.S.C. § 1326(a) for his illegal reentry into the United States after being removed in 2012.  Relevant to his sentence was a 2010 conviction for aggravated assault under a Texas statute.  We will examine the Texas conviction in more detail later, but for now it suffices to say the presentence report considered that conviction to have been for an aggravated felony.  The district court agreed.  This is important because 8 U.S.C. § 1326(b)(2) increases the maximum sentence of imprisonment for a Section 1326(a) conviction to 20 years when the alien's "removal was subsequent to a conviction for commission of an aggravated felony."  The district court did not sentence anywhere near that maximum, imposing 56 months in prison.

Section 1326 is part of the Immigration and Nationality Act, which lists more than a score of aggravated felonies.  *See* 8 U.S.C. § 1101(a)(43).  The relevant one here is "a crime of violence (as defined in section 16 of Title 18 . . .) for which the term of imprisonment [is] at least one year." § 1101(a)(43)(F).  The referenced Section 16 identifies two categories of crimes of violence:

> (a) an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another; or
>
> (b) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

18 U.S.C. § 16.

When we first considered Torres's argument that Section 1326(b)(2) should not apply, we applied a recent en banc decision of this court to hold that

2

the language of Section 16(b) was not unconstitutionally vague. *See United States v. Torres*, 677 F. App'x 145, 146 (5th Cir. 2017) (citing *United States v. Gonzalez-Longoria*, 831 F.3d 670 (5th Cir. 2016) (en banc), *vacated*, 138 S. Ct. 2668 (2018)). We therefore granted the government's motion for summary affirmance. *See id.* The Supreme Court returned this case to us for further consideration in light of *Sessions v. Dimaya*, 138 S. Ct. 1204 (2018), which declared Section 16(b) to be unconstitutionally vague. *See Aguirre-Arellano v. United States*, 138 S. Ct. 1978 (2018) (opinion addressing several petitioners, including Torres).

We received supplemental briefing and now take another look.


DISCUSSION

In the district court, Torres made the argument he has remade ever since, that his Texas aggravated assault was not a crime of violence under either subsection of Section 16. He was right about Section 16(b). We give *de novo* review to preserved legal issues such as Torres's argument on Section 16(a), and we review any relevant fact-finding by the district court for clear error. *See United States v. Solis-Garcia*, 420 F.3d 511, 514 (5th Cir. 2005).

Torres's sentence of 56 months' imprisonment is well under the 10-year maximum applicable even if his prior Texas assault conviction is not an aggravated felony. *See* 8 U.S.C. § 1326(b)(1). The goal of the appeal, though, is to have the judgment reformed to reflect that the sentence was not imposed under Section 1326(b)(2) for being subsequent to the conviction for an aggravated felony but instead followed conviction for the less serious offenses identified in Section 1326(b)(1).

We know from *Dimaya* that we may not employ the language of Section 16(b) to hold that Torres's aggravated assault conviction is an aggravated felony. The district court's judgment did not refer to Section 16(b), instead

stating that the adjudication of Torres's guilt of illegal reentry after a conviction for an aggravated felony was based on 8 U.S.C. § 1326(a) and (b)(2). The district court's explanation for classifying the offense as an aggravated felony was simply to "adopt the presentence report" both as to "the findings of fact and the application of the guidelines to the facts."

The presentence report also did not refer to Sections 16(a) or (b) but did state that the maximum term of imprisonment was 20 years as set out in Section 1326(b)(2). In his objections to the presentence report, Torres argued that Sections 16(a) and 16(b) were both inapplicable, the former because there was no threatened use of force, the latter because it was unconstitutionally vague. In his initial 2016 brief to this court, Torres repeated those arguments. Once the en banc court held in *Gonzalez-Longoria*, 831 F.3d 670, that Section 16(b) was not unconstitutionally vague, our decision as to Torres was based on that subsection alone without any discussion of Section 16(a). *Torres*, 677 F. App'x at 146.

The issue now, then, is whether Torres's earlier conviction for aggravated assault can be classified as a crime of violence under Section 16(a) and therefore is an aggravated felony under Section 1326(b)(2). We abbreviate our earlier quote of Section 16(a), to say that a crime of violence is an offense that "has as an element the use, attempted use, or threatened use of physical force against the person or property of another." Thus, we must look closely at the statute under which Torres was convicted to see if it has such elements.

None of the documents about Torres's prior conviction for aggravated assault in Texas identify the statute of conviction. Under Texas law, though, an aggravated assault occurs when a person commits an assault, as defined in TEX. PENAL CODE ANN. § 22.01 (West 2011), and the assault includes the presence of at least one aggravating factor outlined in TEX. PENAL CODE ANN.

No. 16-20191

§ 22.02.  The parties agree that Torres's conviction for aggravated assault was based on the following section of the Texas Penal Code that defines assault:

   (a) A person commits an [assault] if the person:

     (1) intentionally, knowingly, or recklessly causes bodily injury to another, including the person's spouse;

     (2) intentionally or knowingly threatens another with imminent bodily injury, including the person's spouse; or

     (3) intentionally or knowingly causes physical contact with another when the person knows or should reasonably believe that the other will regard the contact as offensive or provocative

TEX. PENAL CODE ANN. § 22.01.  The crime became an aggravated assault because of factors identified in Section 22.02, which are not at issue here.

   We will discuss later the relevance of the language of the indictment. For now, we will identify the match between one section of the assault statute and the indictment.  The charge was that Torres did "unlawfully, intentionally and knowingly threaten [the victim], a member of Defendant's household . . . with imminent bodily injury by using and exhibiting a deadly weapon, namely, [a] knife."  The threat and the imminence of injury mirror the language of Section 22.01(a)(2), a fact to which we will return later.

   In deciding whether Torres's offense has the needed elements, we need to determine whether the entirety of that three-part statute needs to satisfy Section 16(a), or whether it is proper to focus only on part.  That question brings us into the realm of what are known as the categorical and the modified categorical approaches that guide our analysis of whether a prior conviction matches one of the generic crimes to which a sentencing enhancement applies. *See Mathis v. United States,* 136 S. Ct. 2243, 2248 (2016) (discussing 18 U.S.C. § 924(e)).  The Supreme Court described the analysis this way:

     To determine whether a prior conviction is for generic burglary (or other listed crime) courts apply what is known as the categorical approach: They focus solely on whether the elements of

5

the crime of conviction sufficiently match the elements of generic burglary, while ignoring the particular facts of the case.

*Id.* It can get more complicated, though.

First, the statute governing the prior conviction "may list different elements in the alternative, and thereby define multiple crimes"; that is a "divisible" statute. *Id.* at 2249. When that is the case, a special approach is needed. The "sentencing court looks to a limited class of documents (for example, the indictment, jury instructions, or plea agreement and colloquy) to determine what crime, with what elements, a defendant was convicted of." *Id.* at 2249. This use of a limited set of documents to ascertain the precise elements of conviction is known as the modified categorical approach. *Id.*

Second, instead of identifying alternative elements for guilt of different offenses, statutes may identify alternative means to commit a single offense, *i.e.,* "various factual ways of committing some component of the offense." *Id.* An example is listing a variety of structures that can be the subject of a burglary without requiring unanimous juror agreement on which structure was involved. *Id.* at 2256. The categorical approach is used, but we ascribe to the defendant the least culpable conduct that could have given rise to his conviction. *Gomez-Perez v. Lynch*, 829 F.3d 323, 327-28 (5th Cir. 2016).

This emphasis on a process that would lead to uniform, generic meanings across the country for the prior offenses that trigger enhanced penalties has been used for determinations under the Armed Career Criminal Act. *See Taylor v. United States,* 495 U.S. 575, 598-602 (1990). The same analysis has been applied when there is a need to determine whether a prior conviction matches a generic crime identified in a Sentencing Guideline. *See United States v. Howell,* 838 F.3d 489, 494-95 (5th Cir. 2016). It is also used for convictions for illegal reentry in the context of determining whether a prior conviction satisfied the meaning of "crime of violence" in a Sentencing

Guideline. *See United States v. Carrasco–Tercero*, 745 F.3d 192, 195-96 (5th Cir. 2014). In a few decisions, we have used the analysis when deciding the applicability of Section 16(b). *See, e.g.*, *United States v. Echeverria-Gomez*, 627 F.3d 971, 974 (5th Cir. 2010) (citing *United States v. Velazquez-Overa*, 100 F.3d 418, 420-21 (5th Cir. 1996)). We have at least once discussed the categorical approach and its modification in connection with applying Section 16(a). *See Larin-Ulloa v. Gonzales,* 462 F.3d 456, 466-67 (5th Cir. 2006).

We have reviewed these situations in which the categorical approach or its modification has been applied in order to see how well the tasks we need to perform in the current case fit existing caselaw. We are not looking for a match of a previous conviction with a generic crime but instead for whether the prior crime of conviction involved physical force as described in Section 16(a). Also causing us to be somewhat detailed is that in the remand opinion from another of the Fifth Circuit decisions reversed by the Supreme Court because of *Dimaya*, this court did not consider under plain-error review whether the statute was divisible. *United States v. Gomez Gomez*, 917 F.3d 332, 333-34 (5th Cir. 2019). Instead, we simply held that Section 16(a) applied to the appellant's prior conviction under Texas Penal Code Section 22.01(a)(1). *Id.*

Here, with the claimed error preserved, we conclude we must consider the applicability of the modified categorical approach. If we decide the three separate subsections of the Texas assault statute do not identify three separate crimes, then we need to decide if all "the elements of the crime of conviction sufficiently match the elements of" Section 16(a) for a crime of violence. *Mathis*, 136 S. Ct. at 2248. On the other hand, it is not necessary to decide if all the elements qualify if the subsections can each be classified as a different crime. If they can, then under the modified categorical approach, we have to decide only if Torres's specific form of assault was a crime of violence. Thus, we first analyze whether the Texas assault statute is divisible, or to expand on

that description, whether these subsections are identifying three different offenses or three different means to commit one offense. *Id.* at 2256.

One way to decide is simply to look at the statutory language. *Id.* Conviction is allowed under subsection (a)(1) if the defendant "causes bodily injury to another," under subsection (a)(2) if the defendant "threatens another with imminent bodily injury," and under subsection (a)(3) if the defendant "causes physical contact with another when the person knows or should reasonably believe that the other will regard the contact as offensive or provocative." TEX. PENAL CODE ANN. § 22.01. Intentional or knowing acts qualify under all three subsections, while recklessness is also enough under subsection (a)(1). *Id.* In summary, one subsection requires that bodily injury be caused, another that it merely be threatened, and another that offensive or provocative physical contact be caused. We are convinced these are independent groups of elements for committing multiple crimes.

Further, an explicit indication of divisibility can come from the state's highest court. *Mathis*, 136 S. Ct. at 2256. The Texas Court of Criminal Appeals, supreme in Texas on criminal jurisprudence, has said subparts (1), (2) and (3) of Texas Penal Code Section 22.01(a) define "three distinct criminal offenses." *McKithan v. State*, 324 S.W.3d 582, 591 (Tex. Crim. App. 2010) (quoting *Landrian v. State*, 268 S.W.3d 532, 540 (Tex. Crim. App. 2008)). Certainly, then, Section 22.01(a) is divisible into three separate, enumerated offenses. Thus, we can employ the modified categorical approach.

We now review whether we can determine which of the subsections applied to Torres's offense. Attached to the presentence report were the documents relevant to Torres's 2010 conviction for aggravated assault. His amended indictment charged that he "intentionally and knowingly threaten[ed another] . . . with imminent bodily injury by using and exhibiting  a deadly weapon, namely, [a] knife." He pled guilty to that indictment, and the crime

in the judgment of conviction was called "agg[ravated] assault – family member." Neither the indictment nor the judgment identified a statute, but the indictment uses the language of Section 22.01(a)(2). That, then, is the subsection we analyze. *See United States v. Reyes-Contreras*, 910 F.3d 169, 176-79 (5th Cir. 2018) (en banc).

We next decide if the elements of a Section 22.01(a)(2) offense match the requirements of Section 16(a) for a crime of violence, namely, that the offense has as "an element the use, attempted use, or threatened use of physical force against the person or property of another." Not long ago there was an argument to be made that the two do not match. Torres relies on one of our opinions that focused on the distinction between requiring proof under Section 16(a) of physical force and the focus in Section 22.01(a)(1) on bodily injury. *See United States v. Villegas-Hernandez*, 468 F.3d 874, 879 (5th Cir. 2006), *overruled in part by Reyes-Contreras*, 910 F.3d at 181-82. Whatever merit such an argument had when counsel wrote Torres's post-remand brief, the en banc court subsequently invalidated the distinction between direct and indirect force, saying it was an "unnatural separation of causing injury from the use of force." *Reyes-Contreras*, 910 F.3d at 183-84. The reasoning in *Villegas-Hernandez* that Torres relies upon is no more.

After *Reyes-Contreras*, a defendant commits a crime of violence if he attempts, threatens, or actually "applies or employs a force capable of causing physical pain or injury" while, among other mental states, knowing that force is "substantially likely" to cause physical pain or injury. *Id.* at 185 (quoting *Voisine v. United States*, 136 S. Ct. 2272, 2279 (2016)).

A final point. The charging documents show Torres was convicted of "intentionally *and* knowingly" threatening another. We ascribe to him the less culpable of those two mental states. That is because subsection 22.01(a)(2) lists them as "interchangeable means of satisfying a single *mens rea* element."

*Mathis*, 136 S. Ct. at 2253 n.3.  As we previously stated, if a statute lists alternative means of satisfying an element, the categorical approach requires that the least culpable conduct be used.  *See Gomez-Perez*, 829 F.3d at 327-28.  Thus, we consider Torres's underlying assault to have been a *knowing* threat of another with imminent bodily injury.  Section 16(a) applies to the "use, attempted use, or threatened use of physical force," which would include knowing acts.  Further, "bodily injury" includes "physical pain, illness, or any impairment of physical condition."  TEX. PENAL CODE ANN. § 1.07(a)(8) (West 2011).

A knowing threat to another of imminent bodily injury, which is the state statute's requirement, is knowingly threatening to employ a force capable of causing physical pain or injury, which is the Section 16(a) requirement.  That makes commission of an aggravated assault that is premised on Section 22.01(a)(2) a crime of violence.

AFFIRMED.