# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 16-41218

United States Court of Appeals
Fifth Circuit

**FILED**

February 6, 2018

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff–Appellee,

versus

FREDIS ALBERTO REYES-CONTRERAS,
Also Known as Alberto Contreras-Romero,

Defendant–Appellant.

Appeal from the United States District Court
for the Southern District of Texas

Before JONES, SMITH, and PRADO, Circuit Judges.
JERRY E. SMITH, Circuit Judge:

Fredis Reyes-Contreras pleaded guilty of illegal reentry under 8 U.S.C. § 1326(a) and (b). Because he had been convicted of manslaughter in Missouri, the court applied the sixteen-level crime-of-violence ("COV") enhancement under U.S.S.G. § 2L1.2(b)(1)(A)(ii). Reyes-Contreras appeals the enhancement, claiming that Missouri's manslaughter statute is non-generic under

No. 16-41218

*Mathis*. Though we find that the statute is divisible and could warrant an enhancement under the modified categorical approach, the documents of conviction do not indicate the subsection of conviction, so as required by our caselaw we vacate and remand for resentencing.

I.

Reyes-Contreras was apprehended after illegally crossing from Mexico. Because he had been deported, he was charged with illegal reentry under 8 U.S.C. § 1326(a) and (b). He admitted to being a citizen of Honduras and entered a guilty plea with no plea agreement. He claims he entered illegally because a gang in Honduras threatened his life if he did not pay them money.

A criminal record check revealed two Missouri convictions from 2006: one for voluntary manslaughter in the first degree and a second for armed criminal action. An immigration check showed that Reyes-Contreras had been deported in 2012.

Given the above information, the presentence report ("PSR") assigned Reyes-Contreras a base offense level of 8 under U.S.S.G. § 2L1.2(a)[1] and applied a 16-level COV enhancement under U.S.S.G. § 2L1.2(b)(1)(A)(ii). Two levels were subtracted for acceptance of responsibility, and a third level for timely acceptance was subtracted at the sentencing hearing, leaving Reyes-Contreras at a level of 21.

The PSR assigned four criminal history points, three for the Missouri convictions and one for a 2001 conviction that was later subtracted because it was more than ten years old. That yielded a Category II criminal history. The Guidelines range for the offense was 41–51 months, and the district court sentenced Reyes-Contreras to 41 months.

---

[1] Reyes-Contreras was sentenced under the 2015 version of the Guidelines.

No. 16-41218

At issue is the sixteen-level enhancement for a COV given the Missouri conviction for voluntary manslaughter. Reyes-Contreras was seen striking the victim—his brother-in-law—on the head with a baseball bat, causing death. Reyes-Contreras contends he committed the offense in defense of his younger brother because his brother-in-law had attacked his brother with a knife.

Reyes-Contreras was charged with second degree murder, a Class A felony. The indictment includes the fact that Reyes-Contreras caused the death of another by striking him with a baseball bat. Reyes-Contreras pleaded guilty of voluntary manslaughter, a Class B felony. The plea includes neither an elaboration of the facts nor the subsection of conviction. Because the Missouri manslaughter statute criminalizes generic manslaughter in subsection (1) as well as knowingly assisting another in self-murder in subsection (2), Reyes-Contreras asserts that the statute is indivisible and overbroad under *Mathis*. Reyes-Contreras preserved his objection to the enhancement, so our review is de novo. *United States v. Rodriguez*, 711 F.3d 541, 548 (5th Cir. 2013) (en banc).

## II.

### A.

The Guidelines establish that a COV enhancement applies to an enumerated list of crimes, including manslaughter, and to offenses that "ha[ve] as an element the use, attempted use, or threatened use of physical force against the person of another." U.S.S.G. § 2L1.2 cmt. 1(B)(iii). To qualify as an enumerated crime, the statute of conviction must match the generic offense. *Mathis v. United States*, 136 S. Ct. 2243, 2247 (2016); *Taylor v. United States*, 495 U.S. 575, 598 (1990). Under this categorical approach, the court must ignore the facts of the case and ask whether the elements of the crime of conviction and the elements of the generic crime are sufficiently similar. *Mathis*, 136 S. Ct.

3

No. 16-41218

at 2248.  When a defendant pleads guilty, the elements are those things he necessarily admits in his plea.  *Id.*

If a statute is divisible, we employ the modified categorical approach and look to certain documents to determine which subsection of the statute was the basis for conviction.  *Shepard v. United States*, 544 U.S. 13, 25 (2005).  We then compare the elements of that subsection with the elements of the generic crime.  But if the statute lists means of fulfilling a single offense, it is indivisible and must be taken as a whole instead of using the facts of the offense to narrow the statute.  *Descamps v. United States*, 133 S. Ct. 2276, 2290 (2013).

B.

The Missouri voluntary manslaughter statute, MO. ANN. STAT. § 565.023, reads as follows[2]:

> 1. A person commits the crime of voluntary manslaughter if he:
>
> > (1) Causes the death of another person under circumstances that would constitute murder in the second degree under subdivision (1) of subsection 1 of section 565.021, except that he caused the death under the influence of sudden passion arising from adequate cause; or
> >
> > (2) Knowingly assists another in the commission of self-murder.
>
> 2. The defendant shall have the burden of injecting the issue of influence of sudden passion arising from adequate cause under subdivision (1) of subsection 1 of this section.
>
> 3. Voluntary manslaughter is a class B felony.

Second degree murder under MO. ANN. STAT. § 565.023.1(1) has the following

---

[2] Reyes-Contreras was convicted under the 1984 version of the statute.  Minor linguistic amendments were enacted in 2017, updating "crime" to "offense," changing "he" to "he or she," and adding "the offense of" before "voluntary manslaughter" in section 3.

No. 16-41218

elements[3]:

> 1. A person commits the crime of murder in the second degree if he:
>
>> (1) Knowingly causes the death of another person or, with the purpose of causing serious physical injury to another person, causes the death of another person . . . .

The parties do not dispute that manslaughter as defined in subsection (1) is a COV meeting the elements of generic manslaughter.[4] Reyes-Contreras contends that the statute is indivisible and cannot be generic because of the criminalization of assisting another in self-murder in subsection (2). He further asserts that subsection (2) lacks as an element the use of force such that it does not qualify under the alternative definition of a COV.

## C.

To determine whether an alternatively phrased statute lays out elements or means, we follow *Mathis* and look first to state-court decisions, second to the statute itself, and finally to a limited permissible list of documents such as the indictment, jury instructions, and plea agreement and colloquy. If none of those sources definitively answers the question of divisibility, then *Taylor*'s demand for certainty has not been met, and we must consider the statute as a whole. *Mathis*, 136 S. Ct. at 2256–57.

---

[3] This statute was similarly amended in 2017, changing "crime" to "offense" and "he" to "he or she."

[4] *See United States v. Bonilla*, 524 F.3d 647, 654 (5th Cir. 2008) (laying out the generic definition of manslaughter). *Bonilla* looked to the Model Penal Code ("MPC") and LaFave's treatise. LaFave defines voluntary manslaughter as "intentional homicide committed under extenuating circumstances which mitigate, though they do not justify or excuse, the killing." *Id.* (quoting 2 WAYNE R. LAFAVE, SUBSTANTIVE CRIMINAL LAW § 15.2, at 491 (2d ed. 2003)). The MPC likewise defines manslaughter as "a homicide which would otherwise be murder" but is "committed under the influence of extreme mental or emotional disturbance for which there is reasonable explanation or excuse." *Id.* (quoting MODEL PENAL CODE § 210.3(1)(b)). These definitions are substantially similar to Missouri's definition of manslaughter under subsection (1).

No. 16-41218

We conclude that Missouri's manslaughter statute is divisible. There is no state highest-court decision definitively saying that, but the statutory framework and state caselaw as a whole convincingly demonstrate that subsection (1) and subsection (2) manslaughter are offenses with distinct elements.[5]

1.

Divisibility is first seen in the statutory scheme. The provision on lesser-included offenses, MO. ANN. STAT. § 565.025.2(2),[6] delineates subsection (1) voluntary manslaughter as a lesser-included offense of second-degree murder.[7] It does not so list voluntary manslaughter as a whole or under subsection (2). Thus the statutory structure establishes manslaughter under subsections (1) and (2) as separate crimes requiring different elements, given that only one is included in the section on lesser-included offenses.

When voluntary manslaughter under subsection (1) is charged as a lesser-included offense, there are accompanying instructions specifying what the jury must find. This satisfies the *Mathis* criteria, 136 S. Ct. at 2256, that a statute identify "which things must be charged." State caselaw lays out these instructions, showing that to convict a defendant of voluntary manslaughter as a lesser-included offense, the jury must unanimously find the elements of subsection (1) without any consideration of subsection (2).[8] Because the jury

---

[5] *See United States v. Perlaza-Ortiz*, 869 F.3d 375, 379–80 (5th Cir. 2017); *see also United States v. Mendez-Henriquez*, 847 F.3d 214, 219 (5th Cir.) (finding state supreme court case referencing the statutory sections to be "persuasive[]" in the absence of definitive supreme court caselaw), *cert. denied*, 137 S. Ct. 2177 (2017).

[6] This section was transferred to § 565.029 in 2017.

[7] The difference between second-degree murder and voluntary manslaughter is that, for voluntary manslaughter, the defendant must inject evidence of sudden passion and adequate cause. MO. ANN. STAT. §§ 565.021.1(1), 565.023.2. Second-degree murder is a Class A felony, while voluntary manslaughter is a Class B felony. *Id.* §§ 565.021.2, 565.023.3.

[8] *See, e.g.*, *State v. Neal*, 304 S.W.3d 749, 754 (Mo. Ct. App. 2010).

No. 16-41218

must find every element of subsection (1), standing alone, to convict, subsection (1) must contain elements that are distinct from subsection (2).[9]

2.

Missouri state-court opinions also discuss voluntary manslaughter in a way that treats it as divisible. For example, "[a] person commits the crime of voluntary manslaughter if he" satisfies each element under subsection (1).[10] The court ends there full-stop with no mention of alternative means or a discussion of subsection (2). Taking state law as a whole, then, *Taylor*'s "demand for certainty" is met that the voluntary manslaughter statute sets out two separate offenses.

III.

Even though the statute is divisible, we must be able to discern whether the generic subsection (1) manslaughter formed the basis of Reyes-Contreras's conviction. If he was convicted under the statute as a whole or under subsection (2), the enhancement cannot apply unless subsection (2) is generic or has as an element the use of force. *See United States v. Neri-Hernandes*, 504 F.3d 587, 589 (5th Cir. 2007).

A.

Under *Shepard v. United States*, 544 U.S. 13 (2005), we may use the "modified categorical approach" and look to "a limited class of documents" such as the indictment, jury instructions, or plea agreements and colloquies to determine the crime of conviction. *Mathis*, 136 S. Ct. at 2249; *see also Shepard*,

---

[9] *United States v. Reyes-Ochoa*, 861 F.3d 582, 586 (5th Cir. 2017) ("'Elements' are the 'constituent parts' of a crime's legal definition—the things the 'prosecution must prove to sustain a conviction.'" (quoting *Mathis*, 136 S. Ct. at 2248)).

[10] *Patrick v. Purkett*, No. 4:07CV00974, 2010 WL 2926230, at *4 (E.D. Mo. July 20, 2010).

No. 16-41218

544 U.S. at 26. Those may be used solely "as a tool to identify the elements of the crime of conviction" and not to identify facts supporting a COV enhancement. *Mathis*, 136 S. Ct. at 2253; *see also Descamps*, 133 S. Ct. at 2285.

Reyes-Contreras's indictment shows that he was charged with second-degree murder (Count One) and armed criminal action (Count Two). The indictment makes no mention of a lesser-included offense or of manslaughter as a separate offense. Count One does reflect that Reyes-Contreras "knowingly or with the purpose of causing serious physical injury to [the victim] caused [his death] by striking him with a baseball bat." His conviction, however, merely states "voluntary manslaughter first degree."

At sentencing, the district court stated it was clear which subsection formed the basis of conviction because the judgment shows "voluntary manslaughter first degree." There is, however, no such crime; there is only voluntary manslaughter with two subsections ungraded by degree. *See* MO. ANN. STAT. § 565.023. The district court stated that the degrees were defined in MO. ANN. STAT. § 565.025.[11] That section, however, delineates lesser-included offenses of first- and second-degree murder. Although it does state that "voluntary manslaughter under subdivision (1) of subsection 1 of section 565.023" is a "lesser degree" offense of second-degree murder, MO. ANN. STAT. § 565.025, it nowhere defines subsection (1) manslaughter as "first degree." Thus, the district court's reliance on this language in the plea is misguided.

## B.

As a general rule, we cannot use an indictment to narrow the subsection

---

[11] "And just to be clear, what I'm saying is that this judgment does show under which statute he was—or subsection he was convicted because it does show the voluntary manslaughter first degree. And the statute 565.025 differentiates which section of the Voluntary Manslaughter would constitute first degree, and that is only Subsection 1."

of conviction if it is for a crime different from the crime pleaded. *United States v. Turner*, 349 F.3d 833, 836 (5th Cir. 2003). The general rule in *Turner* was explained further in *Neri-Hernandes* and *Bonilla*. In *Neri-Hernandes*, 504 F.3d at 590, we stated broadly that "the district court cannot use the indictment to pare down the statute of conviction to determine under which subsection [the defendant] pleaded guilty" if the defendant never pleaded to the crime in the indictment. *Accord Bonilla*, 524 F.3d at 652.

There is an exception where the plea references a lesser-included offense, allowing the indictment to clarify the ambiguity in the plea. For example, in *United States v. Martinez-Vega*, 471 F.3d 559, 563 (5th Cir. 2006), the court looked to an indictment charging a different crime from the judgment because the defendant pleaded to "*the* lesser charge contained in the Indictment." The indictment was used to clarify to which crime the judgment referred.

Similarly, in *United States v. Hernandez-Borjas*, 641 F. App'x 367 (5th Cir. 2016) (per curiam), the indictment charged a crime different from the crime of conviction. But the court looked to the indictment because the conviction was "pursuant to a guilty plea to '*the* lesser charge contained in the Indictment.'" *Id.* at 372 (quoting *Martinez-Vega*, 471 F.3d at 562). Though the indictment did not spell out a lesser-included offense, its language tracked the elements of a particular subsection, and it provided the necessary context to look to state law to discover that only one lesser-included offense was possible. Thus, "the indictment [was] relevant to ascertain the meaning of '*the* lesser included offense.'" *Id.*

Neither Reyes-Contreras's indictment nor his plea refers to a lesser-included offense. It is clear from Missouri law that subsection (1) is the only possible offense in the judgment, in light of the elements and crime in the indictment. Moreover, the use of "first degree" in the judgment seems to

No. 16-41218

indicate an intention to narrow down the subsection.

This is not enough to allow us to look to the indictment. The court in *Bonilla*, 524 F.3d at 653 n.4, expressly distinguished *Martinez-Vega* on the ground that "*the* lesser charge was made clear from the judgment, and was found by the court as actually being charged in the original indictment." In contrast, in *Bonilla*, the disposition did not "refer back to a lesser offense in the original indictment." *Id.*[12] Because there is no ambiguity in the judgment requiring us to cross-reference the indictment, we consider the statute as a whole.

IV.

The statute as a whole can support the enhancement if subsection (2) manslaughter is generic or if it contains as an element the use of force. Neither obtains.

A.

The government posits that the entire statute is generic because subsection (1) is undisputedly generic manslaughter, and subsection (2) should be considered generic murder. The government does not try to fit subsection (2) into generic manslaughter, which would be difficult given the generic definition adopted by this circuit.[13]

Assisting another in self-murder is not generic murder. Though assisted

---

[12] The court also noted that *Martinez-Vega* was subject to plain-error review, unlike *Bonilla*, where review was de novo. That is given, however, only as a secondary reason for the distinction; the court does not rely on this difference to make its first distinction tenable. *See Bonilla*, 524 F.3d at 653 n.4.

[13] *Bonilla* defines voluntary manslaughter as "intentional homicide committed under extenuating circumstances which mitigate, though they do not justify or excuse, the killing." 524 F.3d at 654 (quoting WAYNE R. LAFAVE, SUBSTANTIVE CRIMINAL LAW § 15.1 490 (2d ed. 2003)) (emphasis omitted).

No. 16-41218

suicide historically was considered murder, LAFAVE, § 15.6(c), many states now treat it as a separate offense or as part of manslaughter, *id.* & nn.30–31. If a defendant actively participates or directly causes the death of another, a murder conviction can still lie. *Id.* & n.33. The statutes defining assisted suicide, however, are similar to Missouri's and do not delineate the specific role played by the defendant under the assisted-suicide provision. *Id.* at n.31. The MPC also contains a separate section dealing with "Causing or Aiding Suicide" as a crime separate from murder and manslaughter. MODEL PENAL CODE § 210.5. Thus although some conduct can warrant a conviction under either assisted suicide or murder, the two are treated as separate crimes. Further, this circuit has not adopted a generic definition of murder, and this is not the proper case in which to do so.

## B.

Nor does assisting in self-murder require the use of force as defined by this circuit.[14] For the use of force to be an element, force must be a "constituent part of a claim that must be proved for the claim to succeed" in every case charging that offense.[15] Citing *Vargas-Duran*, 356 F.3d at 599, Reyes-Contreras defines use of force as requiring the use of destructive or violent force as distinguished from causing bodily injury through even indirect means. The government stakes the position that indirect force is sufficient, asserting that *United States v. Castleman*, 134 S. Ct. 1405 (2014), overruled Fifth Circuit

---

[14] The government suggests plain-error review applies because Reyes-Contreras did not preserve this objection. But the district court did not impose the enhancement on this ground, so there was no basis for an objection. Reyes-Contreras's arguments regarding the use of force anticipate our authority to affirm on any basis found in the record, and we review them de novo.

[15] *United States v. Vargas-Duran*, 356 F.3d 598, 605 (5th Cir. 2004) (en banc) (quoting BLACK'S LAW DICTIONARY 538 (7th ed. 1999)); *see also United States v. Calderon-Pena*, 383 F.3d 254, 257 (5th Cir. 2004) (en banc) ("[T]he statute of conviction, not the defendant's underlying conduct, is the proper focus.").

precedent requiring destructive or violent force by interpreting the use-of-force clause in 18 U.S.C. § 921(a)(33)(A)(ii) to encompass the common-law definition, which includes offensive touching and indirect applications of force.

*Castleman* interpreted a provision in the context of domestic violence and expressly distinguished its broad definition of "force" in that context from its use in other statutes.[16]  "In defining a *violent* felony [under 18 U.S.C. § 924(e)(1)], we held, the phrase physical force must mea[n] *violent* force." *Castleman*, 134 S. Ct. at 1410 (internal quotation marks omitted) (quoting *Johnson v. United States*, 559 U.S. 133, 140 (2010)).  The Court also clarified that its opinion was tailored to domestic violence and was not meant to cast doubt on circuit-court opinions interpreting COV in other contexts.  *Id.* at 1411 n.4.

A post-*Castleman* panel, in *United States v. Rico-Mejia*, 859 F.3d 318 (5th Cir. 2017), has already held that *Castleman* does not abrogate our decisions on the use of force under the Guidelines, binding us by the rule of orderliness. *Teague v. City of Flower Mound, Tex.*, 179 F.3d 377, 383 (5th Cir. 1999).  "By its express terms, *Castleman*'s analysis is not applicable to the physical force requirement for a crime of violence . . . .  Accordingly, *Castleman* does not disturb this court's precedent regarding the characterization of crimes of violence." *Rico-Mejia*, 859 F.3d at 322–23.

Our precedent includes *Calderon-Pena*, 383 F.3d at 260, in which the en banc court expressly held that an offense that can be committed without "any bodily contact (let alone violent or forceful contact) . . . does not qualify for the sixteen-level enhancement."  Assisting in self-murder is just such an offense.  It "can—*but need not*—involve the application of physical force."  *Id.*  For

---

[16] The Court noted that domestic violence is "a term of art encompassing acts that one might not characterize as 'violent' in a nondomestic context." *Castleman*, 134 S. Ct. at 1411.

example, a man was charged under Missouri's voluntary-manslaughter statute for entering a suicide pact with a friend even though his only action was to hand his friend the weapon.[17]  Therefore subsection (2) manslaughter is not a crime that has use of force as an element.

The government rightly points out that many circuits have rejected this view and have expanded *Castleman* to state that indirect causation of bodily injury may warrant a COV enhancement.  But *Castleman* does not on its own terms make this expansion, and a previous panel declined to interpret it as doing so, thus binding us.  *See United States v. Tanksley*, 848 F.3d 347, 350 (5th Cir. 2017).

V.

The government advances the alternative position that if this panel reverses the enhancement for the manslaughter conviction, Reyes-Contreras's conviction for armed criminal action can support the enhancement as a crime having as an element the use of force.  The statute reads, "Except as provided in subsection 4 of this section, any person who commits any felony under the laws of this state by, with, or through the use, assistance, or aid of a dangerous instrument or deadly weapon is also guilty of the crime of armed criminal action."  MO. ANN. STAT. § 571.015.  Missouri further defines "dangerous instrument" as "any instrument, article or substance, which, under the circumstances in which it is used, is readily capable of causing death or other serious physical injury."  MO. ANN. STAT. § 556.061(9).[18]  We have determined that, to qualify for the COV enhancement, use of such an instrument must be

---

[17] *Man Arrested After Friend Kills Himself*, COLUM. DAILY TRIB. (June 17, 2009, 12:20 PM).

[18] This definition was moved to § 556.061(20) in 2017.

more than mere possession but must include at least threatening physical force. *United States v. Velasco*, 465 F.3d 633, 640 (5th Cir. 2006).

Because, under Missouri law, possession that bolsters a defendant's confidence to commit the felony is sufficient for conviction of armed criminal action, the statute criminalizes more than the "use" of force under the Guidelines. *State v. Jones*, 479 S.W.3d 100 (Mo. 2016). "Armed criminal action under section 571.015.1 does not require that the defendant actually attack or threaten an imminent attack with the weapon." *Id.* at 108. Rather, a defendant who commits a burglary with a gun in hand is guilty if the weapon "bolster[ed] his confidence," even though no one sees him, no one is threatened, and the gun is not used to breach the threshold. *Id.* at 109. That is because the words "aid" and "assistance" sweep in more conduct than does "use" alone, *id.* at 107, and make the statute broader than permitted for a COV having the use of force as an element.

## VI.

The district court's error in the Guidelines calculation was not harmless. To show that error is harmless, the government must demonstrate both that the district court would have imposed the same sentence for the same reasons and that it was "not influenced by an erroneous Guidelines calculation." *United States v. Castro-Alfonso*, 841 F.3d 292, 298 (5th Cir. 2016).

To show that it would have imposed the same sentence, a district court need not use "magic words," but it must be evident that it would have imposed the same sentence absent the error. *United States v. Shepherd*, 848 F.3d 425, 427 (5th Cir. 2017). The court considered the Guidelines range given the sixteen-level enhancement, mitigating circumstances, and the Guidelines range under the then-forthcoming 2016 amendments that would have lowered the range from 41–51 months to 21–27 months. The court stated that the 2016

No. 16-41218

Guidelines did not "adequately address the type of conviction that we have on the record here" and sentenced Reyes-Contreras to the low end of the erroneously calculated Guidelines range.  Given the eight-level enhancement for armed criminal action, the proper range is 15–21 months.  Though the record strongly supports that the district court would think this too low, given that it saw the amended range as too low, it never stated that it would impose the same 41-month sentence absent any error.[19]  The government thus fails to establish harmless error on the first prong.

Even if the evidence were sufficient to find that the court would have departed upward from the proper range, the government also fails to carry its burden to show that the chosen sentence was not influenced by the erroneous calculation.

> [I]t is a stretch to say that the court's choice of the same parameters as the improperly calculated guidelines range in this case were mere serendipity.  While the court expressed a multitude of reasons for imposing a sentence above the properly calculated range, we can find no indication that the court's decision . . . was independent of the erroneous calculation that called the court's attention to that range in the first instance.

*Martinez-Romero*, 817 F.3d at 926; *see also United States v. Ibarra-Luna*, 628 F.3d 712, 717 (5th Cir. 2010).  Because the district court did not provide a basis for the chosen sentence independent of the erroneously calculated range, the error was not harmless.

The judgment of sentence is VACATED and REMANDED for resentencing.

---

[19] *See United States v. Martinez-Romero*, 817 F.3d 917, 925 (5th Cir. 2016) (explaining that the court stated three times that it would impose the same sentence regardless of error).

No. 16-41218

EDITH H. JONES, Circuit Judge, concurring in the judgment:

The rule of orderliness binds us to follow a prior published opinion that renders a *res nova* interpretation of a Supreme Court decision. This rule requires my concurrence here, but I write separately to explain why I believe that a prior panel erred in holding that *United States v. Castleman*, 134 S. Ct. 1405 (2014) does not abrogate our circuit's "direct force" requirement for "crimes of violence." *See United States v. Rico-Mejia*, 859 F.3d 318, 322-23 (5th Cir. 2017) ("*Castleman* does not disturb this court's precedent regarding the characterization of crimes of violence."). For the following reasons, *Rico-Mejia* decided this issue incorrectly and should be reconsidered.[1]

Under the Sentencing Guidelines for illegal reentry, a "crime of violence" includes offenses that "ha[ve] as an element the use, attempted use, or threatened use of physical force against the person of another." U.S.S.G. § 2L1.2 cmt. 2.[2] The key issue here is whether the *indirect* application of violent force—e.g., administering a deadly poison—qualifies as the "use of force." Unfortunately, this court has indicated that such indirect applications of force do not qualify. *See United States v. Villegas-Hernandez*, 468 F.3d 874, 879 n.6 (5th Cir. 2006) (concluding that this circuit had rejected a view of "use of force" encompassing "tricking a person into consuming poison") (quoting *United States v. Calderon-Pena*, 383 F.3d 254, 270 (5th Cir. 2004) (Smith, J., dissenting)).

---

[1] The result of the following analysis would mean that we uphold the sentence enhancement here because subsection (2) of MO. REV. STAT. § 565.023.1, which criminalizes assisted suicide, has the "use of force" as an element and should be designated a "crime of violence" under *Castleman*.

[2] The same "use of physical force" language appears in the definition of "crime of violence" for the career offender enhancement under U.S.S.G. § 4B1.2(a)(1).

16

*Castleman* rejected the direct versus indirect force distinction and dismissed a defendant's claim that poisoning is not the "use of force":

> The "use of force" in Castleman's example is not the act of "sprinkl[ing]" the poison; it is the act of employing poison knowingly as a device to cause physical harm. *That the harm occurs indirectly, rather than directly (as with a kick or punch), does not matter.* Under Castleman's logic, after all, one could say that pulling the trigger on a gun is not a "use of force" because it is the bullet, not the trigger, that actually strikes the victim.

*Castleman*, 134 S. Ct. at 1415 (emphasis added). Justice Sotomayor's analysis in *Castleman* is common sense.

*Rico-Mejia* held that *Castleman* applies only in the context of the misdemeanor crime of domestic violence defined in 18 U.S.C. § 921(a)(33)(A): "By its express terms, *Castleman*'s analysis is not applicable to the physical force requirement for a crime of violence." 859 F.3d at 322. This confuses the different legal questions discussed in *Castleman*. Certainly, *Castleman* held that the misdemeanor crime of domestic violence encompasses "the slightest offensive touching"—that is, the degree of force necessary for common-law battery. *Castleman*, 134 S. Ct. at 1410 (quoting *Johnson v. United States*, 559 U.S. 133, 139, 130 S. Ct. 1265, 1270 (2010)). The Court included a footnote acknowledging that "[t]he Courts of Appeals have generally held that mere offensive touching cannot constitute the 'physical force' necessary to a 'crime of violence.'" *Castleman*, 134 S. Ct. at 1411 n.4. And the Court explained that "[n]othing in today's opinion casts doubt on these holdings, because—as we explain—'domestic violence' encompasses a range of force broader than that which constitutes 'violence' *simpliciter*." *Id.* (emphasis in original).

But the requisite degree or "range" of force is an issue entirely separate from whether that force is applied directly or indirectly. As *Castleman* specified, if the degree of force is sufficient, it "does not matter" whether "the

harm occurs indirectly, rather than directly." *Id.* at 1415. Thus, though *Castleman* does not alter the degree of force this circuit requires to satisfy the "crime of violence" enhancement, it ought to abrogate our decisions holding that indirect applications of force are distinct and insufficient.

Every other circuit to address this issue has applied *Castleman*'s direct-indirect analysis in the "crime of violence" or "violent felony" context. *See United States v. Ellison*, 866 F.3d 32, 37 (1st Cir. 2017) (Barron, J.) (finding "no argument as to why the logic of *Castleman* is inapplicable" to the "crime of violence" analysis); *United States v. Hill*, 832 F.3d 135, 144 (2d Cir. 2016) (Livingston, J.) (relying on *Castleman* to determine that Hobbs Act robbery constitutes a "crime of violence"); *United States v. Chapman*, 866 F.3d 129, 133 (3d Cir. 2017) (Greenaway, J.) (holding that *Castleman* "rejected the contention that knowingly or intentionally poisoning another person does not constitute a use of force"); *United States v. Reid*, 861 F.3d 523, 529 (4th Cir. 2017) (Niemeyer, J.) (holding that *Castleman* precludes the "argument that the phrase 'use of physical force' excludes *indirect* applications") (emphasis in original); *United States v. Verwiebe*, 874 F.3d 258, 261 (6th Cir. 2017) (Sutton, J.) (relying on *Castleman* to reject the claim that "tripping somebody into oncoming traffic, or for that matter perpetrating a sarin gas attack, would not be a crime of violence"); *Hill v. United States*, 877 F.3d 717, 720 (7th Cir. 2017) (Easterbrook, J.) (citing *Castleman* to hold that "administering poison" satisfies the "use of force" requirement for a "violent felony"); *United States v. Rice*, 813 F.3d 704, 706 (8th Cir. 2016) (Murphy, J.) (relying on *Castleman* to hold that second degree battery "includes the use of physical force as an element"); *United States v. Calvillo-Palacios*, 860 F.3d 1285, 1291 (9th Cir. 2017) (O'Scannlain, J.) ("*Castleman* explicitly rejected the poison hypothetical frequently employed by other circuits"); *United States v. Benton*, 876 F.3d 1260,

1263 (10th Cir. 2017) (Briscoe, J.) (relying on *Castleman* to hold that aggravated assault with a deadly weapon is a "crime of violence"); *United States v. Haldemann*, 664 F. App'x 820, 822 (11th Cir. 2016) (per curiam) (relying on *Castleman* to hold that "whether that use of force occurs indirectly, rather than directly, by way of the defendant's actions is of no consequence"); *United States v. Redrick*, 841 F.3d 478, 484 (D.C. Cir. 2016) (Silberman, J.) (relying on *Castleman* to reject the poison hypothetical).

When every other circuit interprets a Supreme Court decision in one way, and we interpret it another, it is worth considering whether we are mistaken. *Rico-Mejia* devoted a mere three sentences to distinguishing *Castleman*, and the opinion did not acknowledge the circuit split. Because this court stands alone in holding the nonsensical position that murdering someone with poison is not a "crime of violence," it is time to take another look.