# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

November 30, 2018

Lyle W. Cayce
Clerk

No. 16-41218

UNITED STATES OF AMERICA,

Plaintiff–Appellee,

versus

FREDIS ALBERTO REYES-CONTRERAS,
Also Known as Alberto Contreras-Romero,

Defendant–Appellant.

Appeal from the United States District Court
for the Southern District of Texas

No. 16-41218

Before STEWART, Chief Judge, JONES, SMITH, DENNIS, OWEN, ELROD, SOUTHWICK, HAYNES, GRAVES, HIGGINSON, COSTA, WILLETT, HO, DUNCAN, ENGELHARDT, and OLDHAM, Circuit Judges.[*]

JERRY E. SMITH, Circuit Judge, joined by JONES, OWEN, ELROD, SOUTHWICK, HAYNES, WILLETT, HO, DUNCAN, ENGELHARDT, and OLDHAM, Circuit Judges: [**]

Fredis Reyes-Contreras pleaded guilty of illegal reentry. Because he had been convicted of voluntary manslaughter in Missouri, the district court applied a sentencing enhancement for a crime of violence ("COV"). Well represented by the Federal Public Defender, Reyes-Contreras appealed to challenge the enhancement. Burdened by binding caselaw that required us to declare that killing a person with a baseball bat is not a COV, the panel vacated for resentencing.[1] The court granted the government's petition for rehearing en banc, thus vacating the panel opinion.[2] Finding it necessary to overrule several of our precedents, we now affirm the judgment of conviction and sentence.

I.

Reyes-Contreras was deported in 2012 and was apprehended in 2016 immediately upon reentry from Mexico. He admitted to being a citizen of Honduras and pleaded guilty, without a plea agreement, of being found in the United States unlawfully after having been deported, in violation of 8 U.S.C. § 1326(a) and (b) (2012).

---

[*] Judge Prado, a member of the panel, retired on April 2, 2018.

[**] Chief Judge Stewart and Judges Dennis, Graves, Higginson, and Costa concur in Parts I through IV and in the judgment. The opinion's analysis under *Shepard v. United States*, 544 U.S. 13 (2005), results in the conclusion that Reyes-Contreras's prior offense under Missouri law is equivalent to generic manslaughter, which resolves the case. These judges would end the analysis there and hence would not reach the opinion's remaining parts.

[1] *United States v. Reyes-Contreras*, 882 F.3d 113 (5th Cir. 2018).

[2] *United States v. Reyes-Contreras*, 892 F.3d 800 (5th Cir. 2018); 5TH CIR. R. 41.3.

No. 16-41218

Reyes-Contreras had two Missouri convictions in 2006: one for voluntary manslaughter in the first degree and a second for armed criminal action. The presentence report assigned a base offense level of 8 under U.S. SENTENCING GUIDELINES MANUAL ("U.S.S.G.") § 2L1.2(a) (2015)[3] and, deeming the voluntary manslaughter conviction to be a COV, applied a sixteen-level enhancement under U.S.S.G. § 2L1.2(b)(1)(A)(ii).[4]

With respect to the manslaughter conviction, the indictment states that Reyes-Contreras struck the victim with a baseball bat, causing death. Although he was charged with second-degree murder, a Class A felony, Reyes-Contreras pleaded guilty of voluntary manslaughter, a Class B felony. The plea includes neither an elaboration of the facts nor the subsection of conviction. Because the Missouri manslaughter statute criminalizes generic manslaughter as well as knowingly assisting another in self-murder, Reyes-Contreras asserted that the statute is indivisible and overbroad under *Mathis v. United States*, 136 S. Ct. 2243 (2016).[5]

---

[3] Section 2L1.2 is the guideline for (as it is entitled) "Unlawfully Entering or Remaining in the United States." Since the 2015 version that applies to Reyes-Contreras, § 2L1.2 has been substantially rewritten and no longer includes the reference to "a crime of violence" that appears in the 2015 version at § 2L1.2(b)(1)(A)(ii). Instead, the amended guideline generally refers to the length of sentence that was imposed instead of the nature of the crime. *See* U.S.S.G. § 2L1.2(b)(2) (2018). The exception is that the subsection addressing misdemeanor offenses includes "crimes of violence." *Id.* § 2L1.2(b)(2)(E).

[4] Two levels were subtracted for acceptance of responsibility, and a third level for timely acceptance was deducted at sentencing, leaving a net base offense level of 21. The presentence report assigned four criminal history points: three for the Missouri convictions and one for a 2001 conviction that was later subtracted because it was more than ten years old. That yielded a Category II criminal history. The resulting guideline range was 41 to 51 months' imprisonment. The district court sentenced Reyes-Contreras to 41 months.

[5] Reyes-Contreras preserved his objection to the enhancement, so our review is *de novo*. *United States v. Rodriguez*, 711 F.3d 541, 548 (5th Cir. 2013) (en banc).

No. 16-41218

## II.

## A.

The Sentencing Guidelines, U.S.S.G. § 2L1.2(b)(1)(A)(ii), call for a sixteen-level enhancement for "a crime of violence." The Commentary to sub-section (b)(1) contains a "[d]efinitions" segment, Application Note 1(B)(iii), which defines "[c]rime of violence" to encompass both an enumerated list of crimes, including "manslaughter," and "any other offense . . . that has as an element the use, attempted use, or threatened use of physical force against the person of another." Our main task is to decide whether Reyes-Contreras's state conviction is for a COV under one or both of those definitions.

To qualify as an enumerated crime, the statute of conviction must match the generic offense—here, manslaughter. *Mathis*, 136 S. Ct. at 2247; *Taylor v. United States*, 495 U.S. 575, 598 (1990).[6] Under that so-called "categorical approach," the court should "ignor[e] the particular facts of the case" and instead should ask whether the elements of the crime of conviction and the elements of the generic crime are sufficiently similar. *Mathis*, 136 S. Ct. at 2248 (citation omitted). That requires us first to identify the crime of convic-tion. Where a defendant pleads guilty, the elements are those things he nec-essarily admits in his plea. *Id.*

If a statute is divisible, meaning that it describes separate offenses with distinct elements, we employ the "modified categorical approach," which dir-ects us to look only to a limited set of documents to determine which subsection of the statute was the basis for conviction. *Shepard v. United States*, 544 U.S.

---

[6] Although *Mathis* and *Taylor*, as well as some of the other decisions that we discuss herein, are decided under the sentence-enhancement provisions of the Armed Career Crim-inal Act, 18 U.S.C. § 924(e), and not U.S.S.G. § 2L1.2 dealing with unlawful reentry, similar language appears in each context and has been construed congruently. "[W]e treat cases dealing with these provisions interchangeably." *United States v. Moore*, 635 F.3d 774, 776 (5th Cir. 2011) (per curiam).

4

No. 16-41218

13, 25−26 (2005).   We then compare the elements of that subsection to the elements of the generic crime.   But if a statute lists means of committing a single offense, it is indivisible and must be taken as a whole instead of using the facts of the offense to narrow the statute.   *Descamps v. United States*, 570 U.S. 254, 272−74 (2013).

B.

At the time of conviction, the Missouri voluntary-manslaughter statute read as follows[7]:

> 1.  A person commits the crime of voluntary manslaughter if he:
>
>> (1)   Causes the death of another person under circumstances that would constitute murder in the second degree under subdivision (1) of subsection 1 of section 565.021, except that he caused the death under the influence of sudden passion arising from adequate cause; or
>>
>> (2)   Knowingly assists another in the commission of self-murder.
>
> 2.  The defendant shall have the burden of injecting the issue of influence of sudden passion arising from adequate cause under subdivision (1) of subsection 1 of this section.
>
> 3.  Voluntary manslaughter is a class B felony.

MO. REV. STAT. § 565.023.   Missouri second-degree murder has the following elements[8]:

> 1.  A person commits the crime of murder in the second degree if he:
>
>> (1)   Knowingly causes the death of another person or, with the purpose of causing serious physical injury to another person, causes the death of another person . . . .

---

[7] Reyes-Contreras was convicted under the 1984 version.   Minor linguistic amendments were enacted in 2017, updating "crime" to "offense," changing "he" to "he or she," and adding "the offense of" before "voluntary manslaughter" in section 3.

[8] This statute was similarly amended in 2017, changing "crime" to "offense" and "he" to "he or she."

No. 16-41218

*Id.* § 565.021.

III.

The parties do not dispute that voluntary manslaughter as defined in Subdivision (1) of Subsection 1 of Section 565.023[9] is a COV meeting the elements of generic manslaughter. Reyes-Contreras, however, contends that the statute is indivisible and cannot be generic because Subdivision (2) criminalizes assisting another in self-murder. He further asserts that Subdivision (2) lacks, as an element, the use of force, so it does not qualify under the alternate definition of a COV.

Reyes-Contreras sufficiently preserved and briefed the issue of divisibility, and the panel addressed it in detail, 882 F.3d at 119−20, "conclud[ing] that Missouri's manslaughter statute is divisible," *id.* at 119. Although that issue is still properly before us, we do not understand Reyes-Contreras to be emphasizing it now. In any event, we maintain our holding that the statute is divisible under *Mathis*, 136 S. Ct. at 2256−57, and we reinstate and incorporate that part of the panel opinion.

IV.

We must decide whether the basis of Reyes-Contreras's conviction was generic manslaughter under Subdivision (1) of the divisible Subsection 1. If, instead, he was convicted under Subsection 1 as a whole or under only Subdivision (2) of Subsection 1, the enhancement cannot apply unless Subdivision (2) is generic or "has as an element the use . . . of . . . force." U.S.S.G. § 2L1.2 cmt. 1(B)(iii); *see, e.g., United States v. Neri-Hernandes*, 504 F.3d 587,

---

[9] The subparts of Section 565.023 are mildly confusing. Subsection 1 of Section 565.023 contains Subdivision (1) and Subdivision (2). When we refer separately to "Subdivision (1)" or "Subdivision (2)," we mean one of the two constituent parts of Subsection 1.

589 n.2 (5th Cir. 2007).

## A.

As we have said, *Shepard* directs us to employ the "modified categorical approach" and to look to "a limited class of documents," such as the indictment, jury instructions, and plea agreements and colloquies to determine the crime of conviction. *Mathis*, 136 S. Ct. at 2249 (citing *Shepard*, 544 U.S. at 26). Those sources may be used not to locate facts supporting a COV enhancement, but only "as a tool to identify the elements of the crime of conviction." *Id.* at 2253 (citation omitted); *see also Descamps*, 570 U.S. at 263–64.

Reyes-Contreras's indictment mentions only second-degree murder and armed criminal action, with no indication of a lesser-included offense or of manslaughter as a separate offense. Count One, with which we are concerned, says that Reyes-Contreras "knowingly or with the purpose of causing serious physical injury to [the victim] caused [his death] by striking him with a baseball bat." That is insufficient to identify the crime of conviction.

## B.

In deciding whether Reyes-Contreras was convicted under Subdivision (1) or Subdivision (2), we are mindful of the general rule that we cannot use an indictment to narrow the statute of conviction if the indictment is for a crime different from the crime stated in the judgment of conviction. *See United States v. Turner*, 349 F.3d 833, 836 (5th Cir. 2003). The general rule in *Turner* was explained further in *Neri-Hernandes*, 504 F.3d at 590, and *United States v. Bonilla*, 524 F.3d 647, 652 (5th Cir. 2008). In *Neri-Hernandes*, 504 F.3d at 590, we stated broadly that "the district court cannot use the indictment to pare down the statute of conviction to determine under which subsection [the defendant] pleaded guilty" if he never pleaded to the crime in the indictment. *Accord Bonilla*, 524 F.3d at 652.

No. 16-41218

Importantly, for purposes of Reyes-Contreras's appeal, there is an exception where the plea references a lesser-included offense, allowing the indictment to clarify any ambiguity in the plea.  For example, in *United States v. Martinez-Vega*, 471 F.3d 559, 563 (5th Cir. 2006), we looked to an indictment charging a crime different from the crime stated in the judgment because the defendant pleaded to "*the* lesser charge contained in the Indictment."  Thus, the indictment was used to clarify to which crime the judgment referred. Similarly, in *United States v. Hernandez-Borjas*, 641 F. App'x 367, 369 (5th Cir. 2016) (per curiam), the indictment charged a crime different from the crime of conviction.  But, relying on *Martinez-Vega*, we looked to the indictment.  *Id.* at 372 (quoting *Martinez-Vega*, 471 F.3d at 562).  Though the indictment did not spell out a lesser-included offense, its language tracked the elements of a particular subsection and provided the necessary context to show that only one lesser-included offense was possible.  Thus, "the indictment [was] relevant to ascertain the meaning of '*the* lesser included offense.'"  *Id.*

Neither Reyes-Contreras's indictment nor his plea explicitly refers to a lesser-included offense.  It is nonetheless evident, based on the language in the indictment, that he was charged under Subdivision (1)[10] and not Subdivision (2).[11]  And just as obviously, he pleaded guilty of violating Subdivision (1) and not Subdivision (2).

The conclusion that Reyes-Contreras was convicted under Subdivision (1) flows unavoidably from MISSOURI REVISED STATUTES § 565.025.2(2),[12] which delineates Subdivision (1) voluntary manslaughter as a lesser-included

---

[10] "[C]ircumstances that would constitute murder in the second degree."  MO. REV. STAT. ANN. § 565.023.1(1).

[11] "[A]ssist[ing] . . . self-murder."  *Id.* § 565.023.1(2).

[12] This section was transferred to § 565.029 in 2017.

No. 16-41218

offense of second-degree murder. It does not likewise list voluntary man-slaughter as a whole or under Subdivision (2). The panel thus concluded, 882 F.3d at 121−22, that "[i]t is clear from Missouri law that [Subdivision] (1) is the only possible offense in the judgment" and that "the use of 'first degree' in the judgment seems to indicate an intention to narrow down" the crime of conviction.[13]

As the panel further recognized, however, under our well-established rule of orderliness,[14] *Bonilla* bars that common-sense reasoning. In *Bonilla*, we held that

> [b]ecause the criminal information[15] charges a crime of which Bo-nilla was not convicted, it cannot be used to "pare down the statute of conviction to determine under which subsection [Bonilla] pleaded guilty." *United States v. Neri-Hernandes*, 504 F.3d 587, 590 (5th Cir. 2007); *see United States v. Gonzalez-Ramirez*, 477 F.3d 310, 315 (5th Cir. 2007) (reaching same conclusion when de-fendant pleaded guilty to attempted kidnapping but indictment charged only aggravated kidnapping); *see also United States v. Turner*, 349 F.3d 833, 836 (5th Cir. 2003) (holding that, in the context of USSG § 4B1.2, "a district court may not rely on a charg-ing document without first establishing that the crime charged was the same crime for which the defendant was convicted").

---

[13] The Federal Public Defender admitted, at en banc oral argument, that there is no plausible basis for considering "first degree" to mean "Subdivision (2)," and we decline to treat the express language of the judgment as an insignificant ink blot. Another reason for narrow-ing the crime of conviction is that the Missouri indictment contained a second count, "Armed Criminal Action," and the judgment so reflected "Armed Criminal Action (Ungraded Felony)." The armed criminal action charge expressly incorporated the key allegations from the first count, i.e., that Reyes-Contreras "knowingly or with the purpose of causing serious physical injury . . . caused the death of Jose Madrigal by striking him with a baseball bat." This commonality between the first and second counts is another valid reason for the district court to use the indictment's allegations to pare down the manslaughter conviction to Subdivision (1).

[14] "[O]nly an intervening change in the law (such as by a Supreme Court case) permits a subsequent panel to decline to follow a prior Fifth Circuit precedent." *United States v. Alcantar*, 733 F.3d 143, 145 (5th Cir. 2013) (citation omitted).

[15] We treat the criminal information in *Bonilla* (under New York law) as equivalent to the indictment under Missouri law.

9

Therefore, the district court could not consider the criminal information to establish that Bonilla's offense qualified as a crime of violence.

*Bonilla*, 524 F.3d at 652−53.   The corresponding footnote offered further explanation:

> The government relies on . . . *United States v. Martinez-Vega*, 471 F.3d 559 (5th Cir. 2006) . . . , but this case is distinguishable. In *Martinez-Vega*, we held that a judgment . . . showed that he was convicted of "*the* lesser charge contained in the indictment."   *Id.* at 563 . . . .   Because *the* lesser charge was made clear from the judgment, and was found by the court as actually being charged in the original indictment, the applicant could not carry his "burden of demonstrating plain error."   *Id.*   In this case, we have a certificate of disposition that does not refer back to a lesser offense in the original indictment. . . . Further, extending *Martinez-Vega* to this situation would unnecessarily bring it into conflict with *Neri-Hernandez* and *Gonzalez-Ramirez*.

*Id.* at 653 n.4.

This court's decision in *Bonilla* defies ordinary logic and is error.  Most importantly, it disobeys Supreme Court precedent.  Writing for the Court in *Shepard*, 544 U.S. at 16, Justice Souter described the question as "whether a sentencing court can look to police reports or complaint applications to determine whether an earlier guilty plea necessarily admitted, and supported a conviction for, generic burglary."  The Court closed with the following summary:

> We hold that enquiry under the [Armed Career Criminal Act] to determine whether a plea of guilty to burglary defined by a non-generic statute necessarily admitted elements of the generic offense is limited to the terms of the charging document, the terms of a plea agreement or transcript of colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant, or to some comparable judicial record of this information.

*Id.* at 26.

The *Shepard* Court was wary of undermining the categorical approach

No. 16-41218

by entertaining "subsequent evidentiary enquiries into the factual basis for the earlier conviction." *Id.* at 20. It extended to guilty-plea cases (such as Reyes-Contreras's) its reasoning in *Taylor*, which imposed the categorical approach for jury convictions: "*Taylor* is clear that any enquiry beyond statute and charging document must be narrowly restricted to implement the object of the statute and avoid evidentiary disputes." *Id.* at 23 n.4 (citing *Taylor*, 495 U.S. at 602).

Nothing about Reyes-Contreras's sentence enhancement even remotely runs afoul of *Shepard*, which spoke to avoiding inquiry into whether the minute details of a burglary (whether it involved entry into anything but a structure) amounted to generic burglary. No investigation of "brute facts," *Mathis*, 136 S. Ct. at 2248, is implicated here: Defense counsel acknowledges that the crime was a killing by baseball bat. There is not—as there was in *Shepard*—an argument over the details of the crime, which, in any event, we are instructed to ignore.

The only "enquiry beyond" is to examine the judgment to understand that, as the panel explained and we have quoted above, "the use of 'first degree' in the judgment seems to indicate an intention to narrow down" the crime of conviction. *Reyes-Contreras*, 882 F.3d at 122. It is surely true that *Shepard*—by which we are firmly bound—restricts the universe of documents that courts may consider from a guilty-plea case. But scrutinizing police reports and complaint applications is a far cry from merely referring to the indictment and actual judgment for the conviction. Nothing in *Shepard* or *Taylor* requires us to act as robots and to ignore the necessary implications from the formal documents in the file of a judgment of conviction.[16]

---

[16] We are in good company in approving of the use of both the charging document

No. 16-41218

We thus return to *Bonilla* as the main culprit for this part of the analysis, remembering that it held that "[b]ecause the criminal information charges a crime of which Bonilla was not convicted, it cannot be used to 'pare down the statute of conviction to determine under which subsection [Bonilla] pleaded guilty.'"[17] The language from *Bonilla* quoted above, 524 F.3d at 652–53 & n.4, is unsustainable. To the extent of that holding and reasoning, *Bonilla* is overruled.

In barring use of the indictment, *Bonilla* relied on *Neri-Hernandes*. But that decision, too, is flawed in at least one significant respect. The panel in *Neri-Hernandes* pointed to *Turner* in holding that "the district court cannot use the indictment to pare down the statute of conviction to determine under which subsection [the defendant] pleaded guilty." *Neri-Hernandes*, 504 F.3d at 590 (discussing *Turner*, 349 F.3d at 836).

*Turner* uses language that can easily be misapplied, as it was in *Neri-Hernandes*. It is important to understand the context of *Turner*: The defendant was indicted for "burglary of a habitation" (a categorical COV) but pleaded guilty of a lesser-included offense, "burglary of a building" (not a categorical COV). The sentencing court enhanced by using the indictment. We vacated, holding that "a district court may not rely on a charging document without first establishing that the crime charged was the same crime for which the defendant was convicted." *Turner*, 349 F.3d at 836 (quotation omitted).

*Turner* presumably would be proper under *Shepard* if *Turner* were

---

(here, the indictment) and the judgment. The Sixth Circuit held that it is "fair and reasonable" to draw "permissible inferences from . . . prototypical *Shepard* documents" even where, as here, the indictment and plea or judgment are somewhat inconsistent. *United States v. Patterson*, 878 F.3d 215, 219 (6th Cir.), *cert. denied*, 138 S. Ct. 273 (2017).

[17] *Bonilla*, 524 F.3d at 652 (quoting *Neri-Hernandes*, 504 F.3d at 590, and citing *United States v. Gonzalez-Ramirez*, 477 F.3d 310, 315 (5th Cir. 2007), and *Turner*, 349 F.3d at 836).

limited to the uncontroversial proposition that where a defendant pleads to an offense different from the one that was charged, the charge in the indictment cannot be, alone, the operative predicate for the categorical approach. But the *Turner* panel made sweeping statements that do not comport with a correct use of the categorical approach. The court said that "the indictment is not applicable to the analysis of whether the conviction was [a COV]." *Id.* "Unless something outside of the indictment or judgment of conviction is considered, [the] burglary conviction cannot be considered a [COV]." *Id.* "Under the scenario presented here, reliance on the indictment is inappropriate." *Id.* at 837.

In *Shepard*, 544 U.S. at 26, the Court flatly declared the opposite of *Turner*'s broad statements by permitting consideration of "the terms of the charging document . . . [or] some comparable judicial record of this information." That obviously means the court can make reasonable use of the indictment, together with the judgment, to identify the crime of conviction. To the extent that *Neri-Hernandes* imposes a contrary reading of *Shepard*, *Neri-Hernandes* is overruled.[18] And to the extent that *Turner* excludes the indictment or judgment from the category of permitted "comparable judicial record[s]," it likewise is overruled.

In summary, we reiterate our holding that MISSOURI REVISED STATUTES § 565.023.1 is divisible. Based on that predicate, we hold that Subdivision (1) is generic manslaughter and formed the basis of Reyes-Contreras's conviction. It is a COV on which the sentencing enhancement was properly based.

---

[18] The overruled portion of *Neri-Hernandes* consists of the two complete paragraphs appearing at 504 F.3d at 590, which address the defendant's assertion "that the district court erred in looking to the indictment (the charging document) . . . to determine the subsection . . . under which he was convicted because [he] pleaded to a different offense from that for which he was indicted . . . ."

No. 16-41218

V.

A.

Even if we had not held that Section 565.023.1 is divisible and that Subdivision (1) is generic manslaughter and formed the basis of the conviction, the statute as a whole can support the enhancement if Subdivision (2) is generic manslaughter or if it has as an element the use of force. We pretermit a decision on whether Subdivision (2) is generic manslaughter, a question that the district court did not consider. Proceeding directly to the use-of-force issue, we hold, in the alternative,[19] that if Section 565.023.1 is indivisible, Subdivision (2) has as an element the use of force under a proper understanding of Supreme Court precedent. The result—which we explain—is that the enhancement for a COV is legally correct for an independent reason, regardless of divisibility. On that additional basis, we separately affirm.

B.

Assisting in self-murder does not require the use of force as this court heretofore has understood it.[20] Thus, we have held that for the use of force to be an element, force must be a "constituent part of a claim that must be proved for the claim to succeed" in every case charging that offense. *United States v. Vargas-Duran*, 356 F.3d 598, 605 (5th Cir. 2004) (en banc) (quoting BLACK'S LAW DICTIONARY 538 (7th ed. 1999)); *see also United States v. Calderon-Pena*, 383 F.3d 254, 257 (5th Cir. 2004) (en banc) (per curiam) ("[T]he statute of

---

[19] "This circuit follows the rule that alternative holdings are binding precedent and not obiter dictum." *Texas v. United States*, 809 F.3d 134, 178 n.158 (5th Cir. 2015) (quoting *United States v. Potts*, 644 F.3d 233, 237 n.3 (5th Cir. 2011)), *aff'd by an equally divided Court*, 136 S. Ct. 2271 (2016) (per curiam).

[20] The government suggests plain-error review applies because Reyes-Contreras did not preserve that objection. But the district court did not impose the enhancement on that ground, so there was no basis for an objection. Reyes-Contreras's arguments regarding the use of force anticipate our authority to affirm on any basis found in the record, and we review them *de novo*.

14

No. 16-41218

conviction, not the defendant's underlying conduct, is the proper focus." (citations omitted)).

Citing *Vargas-Duran*, 356 F.3d at 599, Reyes-Contreras defines "use of force" as requiring the deployment of destructive or violent force as distinguished from causing bodily injury through indirect means. The government takes the position that indirect force is sufficient. It urges that *United States v. Castleman*, 572 U.S. 157, 162−68 (2014), overruled Fifth Circuit precedent requiring destructive or violent force by interpreting the use-of-force clause in 18 U.S.C. § 921(a)(33)(A)(ii) to encompass the common-law definition, which includes offensive touching and indirect applications of force.

1.

*Castleman* interpreted a statutory provision in the context of domestic violence and distinguished its broad definition of "force" in that context from its use in other statutes.[21] The Court clarified that its opinion was tailored to domestic violence and was not meant to cast doubt on circuit court opinions construing the meaning of COVs in other arenas.[22] Yet the Court spoke more broadly in emphasizing that the fact "[t]hat the harm occurs indirectly, rather than directly . . . , does not matter." *Castleman*, 572 U.S. at 171. The question for us is whether the direct-indirect distinction, inapplicable to domestic disputes, is otherwise valid.

In *United States v. Rico-Mejia*, 859 F.3d 318 (5th Cir. 2017) (on petition for reh'g), a panel held that *Castleman* does not abrogate our decisions on the

---

[21] Domestic violence is "a term of art encompassing acts that one might not characterize as 'violent' in a nondomestic context." *Castleman*, 572 U.S. at 165.

[22] "Nothing in today's opinion casts doubt on these [circuit] holdings, because . . . 'domestic violence' encompasses a range of force broader than that which constitutes 'violence' *simpliciter*." *Castleman*, 572 U.S. at 164 n.4.

use of force under the Sentencing Guidelines. "By its express terms, *Castle-man'*s analysis is not applicable to the physical force requirement for a [COV] . . . . Accordingly, *Castleman* does not disturb this court's precedent regarding the characterization of [COVs]." *Id.* at 322–23. *Rico-Mejia* therefore effectively cabined *Castleman* to the domestic-violence arena and perpetuated the distinction between direct and indirect force in other contexts. *See id.*

The Fifth Circuit stands alone in restricting the reasoning of *Castleman* on direct versus indirect force to misdemeanor crimes of domestic violence. Every other regional court of appeals—that is to say, the First through Eleventh Circuits and the District of Columbia Circuit—has squarely rejected the direct-indirect distinction, and for good reason.[23] In her opinion concurring in the judgment in *Reyes-Contreras*, Judge Jones demonstrated why *Rico-Mejia* is error and why *Castleman* "ought to abrogate our decisions holding that indirect applications of force are distinct and insufficient." *Reyes-Contreras*, 882 F.3d at 126 (Jones, J., concurring). Judge Jones concluded,

> When every other circuit interprets a Supreme Court decision in one way, and we interpret it another, it is worth considering whether we are mistaken. *Rico-Mejia* devoted a mere three sentences to distinguishing *Castleman*, and the opinion did not acknowledge the circuit split. Because this court stands alone in holding the nonsensical position that murdering someone with poison is not a "[COV]," it is time to take another look.

*Id.* at 127.

---

[23] *See, e.g.*, *United States v. Ellison*, 866 F.3d 32 (1st Cir. 2017); *United States v. Hill*, 832 F.3d 135 (2d Cir. 2016); *United States v. Chapman*, 866 F.3d 129 (3d Cir. 2017), *cert. denied*, 138 S. Ct. 1582 (2018); *In re Irby*, 858 F.3d 231 (4th Cir. 2017); *United States v. Verwiebe*, 874 F.3d 258 (6th Cir. 2017), *cert. denied*, 139 S. Ct. 63 (2018); *Hill v. United States*, 877 F.3d 717 (7th Cir. 2017); *United States v. Rice*, 813 F.3d 704 (8th Cir.), *cert. denied*, 137 S. Ct. 59 (2016); *United States v. Calvillo-Palacios*, 860 F.3d 1285 (9th Cir. 2017); *United States v. Ontiveros*, 875 F.3d 533 (10th Cir. 2017), *cert. denied*, 138 S. Ct. 2005 (2018); *United States v. Deshazior*, 882 F.3d 1352 (11th Cir. 2018), *petition for cert. filed* (May 1, 2018) (No. 17-8766); *United States v. Redrick*, 841 F.3d 478 (D.C. Cir. 2016), *cert. denied*, 137 S. Ct. 2204 (2017).

No. 16-41218

Judge Jones properly observed that "Justice Sotomayor's analysis in *Castleman* is common sense." *Id.* at 126. The other circuits are correct.[24] The panel decision in *Rico-Mejia* is incompatible with *Castleman*, and we expressly disapprove its conclusion, 859 F.3d at 322−23, that "*Castleman* does not disturb this court's precedent regarding the characterization of crimes of violence" with regard to indirect force. Our disapproval is essentially for the reasons set forth in Judge Jones's concurrence in *Reyes-Contreras*, 882 F.3d at 125−27.

In *United States v. Villegas-Hernandez*, 468 F.3d 874, 878−83 (5th Cir. 2006), we held that a conviction under TEXAS PENAL CODE § 22.01(a)(1), which proscribes "intentionally, knowingly, or recklessly caus[ing] bodily injury to another . . . ," was not a COV. The panel relied on examples of indirect force and injury caused by guile, deception, or deliberate omission. *Id.* at 879.[25] To the extent that *Villegas-Hernandez* concluded that indirect use of force is not "use of physical force," it is contrary to the examples of indirect force in *Castleman* and, as discussed in more detail below, cannot survive *Castleman*'s conclusion that "[i]t is impossible to cause bodily injury without applying force in the common-law sense." *Castleman*, 572 U.S. at 170.[26] We therefore necessarily overrule Part I.A of *Villegas-Hernandez*, on which *Rico-Mejia*, 859 F.3d at 322, relied in part, to the extent that *Villegas-Hernandez* concluded that indirect force does not constitute the use of physical force.[27]

---

[24] We resist the temptation to pick favorites from among the well-reasoned decisions of our sister circuits.

[25] *Castleman* does not address whether an omission, standing alone, can constitute the use of force, and we are not called on to address such a circumstance today.

[26] The same is true for two other Fifth Circuit decisions relied on in *Rico-Mejia*, 859 F.3d at 321, 322: *United States v. Johnson*, 286 F. App'x 155 (5th Cir. 2008) (per curiam), and *United States v. de la Rosa-Hernandez*, 264 F. App'x 446 (5th Cir. 2008) (per curiam). They are unpublished and therefore not precedent, *see* 5TH CIR. R. 47.5.4, but we explicitly overrule them out of an abundance of caution.

[27] As discussed *infra*, we also overrule parts of *Vargas-Duran* and *Calderon-Pena*, on

No. 16-41218

We hold that, as relevant here, *Castleman* is not limited to cases of domestic violence and that for purposes of identifying a conviction as a COV, there is no valid distinction between direct and indirect force. This disposes of Reyes-Contreras's contention that assisting suicide in Missouri cannot be a COV because such a conviction "can be secured without proof that the defendant actively employed violent force against another." It is therefore irrelevant that (in Reyes-Contreras's words) a conviction "can be sustained when a person self-inflicts death and the defendant knowingly assists that death by providing the other person with the means or instructions by which he or she commits suicide."[28]

In sum, *Rico-Mejia*'s reasoning that *Castleman* is confined to the context of misdemeanor domestic violence confuses two distinct issues. The part of *Castleman* that was so confined was the discussion regarding *degree* of force: whether the definition of a misdemeanor conviction of domestic violence

---

which *Villegas-Hernandez* relies in part. *See Villegas-Hernandez*, 468 F.3d at 879 n.6, 880−83. It is impractical to set forth all the caselaw that is or might be overruled by our elimination of the distinction between direct and indirect force. The list includes, *inter alia*, the following: *United States v. Hernandez-Rodriguez*, 788 F.3d 193 (5th Cir. 2015); *United States v. Garcia-Perez*, 779 F.3d 278 (5th Cir. 2015); *United States v. Herrera-Alvarez*, 753 F.3d 132 (5th Cir. 2014); *United States v. Resendiz-Moreno*, 705 F.3d 203 (5th Cir. 2013); *United States v. Andino-Ortega*, 608 F.3d 305 (5th Cir. 2010); *United States v. Garcia*, 470 F.3d 1143 (5th Cir. 2006); *United States v. Valenzuela*, 389 F.3d 1305 (5th Cir. 2004); *United States v. Gracia-Cantu*, 302 F.3d 308 (5th Cir. 2002); *United States v. Chapa-Garza*, 243 F.3d 921 (5th Cir. 2001).

[28] Reyes-Contreras's reliance on *Curtis Johnson v. United States*, 559 U.S. 133 (2010), and *Leocal v. Ashcroft*, 543 U.S. 1 (2004), is misplaced. Reyes-Contreras cites *Curtis Johnson*, 559 U.S. at 139−40, 142, as "relying on dictionaries to define 'force' as strength and power, and 'violence' to mean extreme, severe, and strong physical force." Likewise, Reyes-Contreras invokes *Leocal*'s reference, 543 U.S. at 9, to "the 'use of . . . physical force against the person of another' [that] requires the 'active employment' of 'violent, physical' force" and to *Leocal*'s statement, *id.* at 11, that "the use of physical force against another person . . . suggests a category of violent, active crimes." Those passages say a lot about the degree of force but nothing about whether it is direct or indirect. *See Reyes-Contreras*, 882 F.3d at 126 (Jones, J., concurring) ("[T]he requisite degree or 'range' of force is an issue entirely separate from whether that force is applied directly or indirectly.").

18

encompasses offensive touching or, instead, requires a level of violent force. Here there is no dispute—and the government agrees—that a COV under U.S.S.G. § 2L1.2 "requires a showing of 'violent force—that is, force capable of causing physical pain or injury . . . .'" *United States v. Hernandez-Hernandez*, 817 F.3d 207, 215 (5th Cir. 2016) (citation omitted). But *Castleman*'s analysis of whether use of force requires *direct or indirect* application did not rest on any distinction regarding the degree of force[29] or on whether it was a case of domestic violence.[30] That confusion may have misled the panel in *Rico-Mejia*. In any event, that is now fixed.

2.

There are more barnacles that need to be scraped from our caselaw ship. In addition to urging us to perpetuate the distinction between direct and indirect force, Reyes-Contreras posits that we should keep an equally illogical "distinction between causing injury and using direct force." Here the primary impediments are the en banc decisions in *Vargas-Duran* and *Calderon-Pena* and their progeny. Both yield implausible results. We overrule them now to the extent that we will explain.

The mischief began with *Vargas-Duran*, in which the en banc court held that a Texas conviction of intoxication assault did not qualify as a COV under U.S.S.G. § 2L1.2 because the intentional use of force was not a necessary component of the offense. Instead, a person could violate the statute by accident or mistake without the intentional use of force. *Vargas-Duran*, 356 F.3d at 605–06. The court reasoned that just because the offense *resulted* in serious bodily injury, that did not mean that the statute required the defendant to *use*

---

[29] *See United States v. Reid*, 861 F.3d 523, 528–29 (4th Cir.), *cert. denied*, 138 S. Ct. 462 (2017).

[30] *See Villanueva v. United States*, 893 F.3d 123, 129 (2d Cir. 2018).

the force that caused the injury. *Id.* at 606.

*Vargas-Duran* is flatly at odds with *Voisine v. United States*, 136 S. Ct. 2272, 2279 (2016), which held that reckless conduct can constitute the use of physical force. *Voisine* reasoned in part that "the word 'use' . . . is indifferent as to whether the actor has the mental state of intention, knowledge, or recklessness with respect to the harmful consequences of his volitional conduct." *Id.* For these purposes, the "use of force" does not require intent because it can include knowing or reckless conduct. To the extent that *Voisine* has not already abrogated the reasoning in *Vargas-Duran*,[31] we disavow and disapprove of *Vargas-Duran*'s conclusion, 356 F.3d at 599, that "the 'use' of force required that defendant intentionally avail himself of that force."

And most importantly for present purposes, *Vargas-Duran*, 356 F.3d at 606, also errantly declared that "there is . . . a difference between a defendant's causation of an injury and the defendant's use of force." That oft-cited statement is flatly contrary to *Castleman*, 572 U.S. at 169, which said that "the knowing or intentional causation of bodily injury necessarily involves the use of physical force." *Castleman* gets right to the point, squarely rejecting the notion that "pulling the trigger on a gun is not a 'use of force' because it is the bullet, not the trigger, that actually strikes the victim." *Id.* at 171. Now that we have eliminated the directness-of-force requirement for a COV, we also hold that *Castleman* and *Voisine* do away with *Vargas-Duran*'s unnatural

---

[31] The abrogation is aptly described in *United States v. Burris*, 896 F.3d 320, 327 & n.48 (5th Cir. 2018), *opinion withdrawn*, ___ F.3d ___, 2018 WL 5960775 (5th Cir. Nov. 14, 2018) (per curiam): that "the first part of *Vargas-Duran*, which had held that 'using' force requires a mental state of intent," was "effectively abrogated" (though not explicitly abrogated) by the adoption of *Voisine* in *United States v. Howell*, 838 F.3d 489, 499−501 (5th Cir. 2016), *cert. denied*, 137 S. Ct. 1108 (2017), and *United States v. Mendez-Henriquez,* 847 F.3d 214, 220−22 (5th Cir.), *cert. denied*, 137 S. Ct. 2177 (2017). In its initial panel brief in the instant case, the government agreed, staking out the position that "*Vargas-Duran* has been abrogated by *Castleman, Voisine,* and decisions by [the Fifth Circuit]."

separation of causing injury from the use of force,[32] a justification used to establish that the defendant's "use of force [was] not an element of the offense of intoxication assault." *Vargas-Duran*, 356 F.3d at 606.[33]

A few months after *Vargas-Duran*, the en banc court built on that mistake in *Calderon-Pena*. The court decided that Texas child endangerment, TEXAS PENAL CODE § 22.041(c), was not a COV because it lacked force as an element. The indictment alleged that the defendant placed a child "in imminent danger of bodily injury, namely, by striking a motor vehicle occupied by the [child] with the Defendant's motor vehicle." *Calderon-Pena*, 383 F.3d at 256. The court relied on the fact that "the offense of child endangerment does not require any bodily contact (let alone violent or forceful contact) or any injury in order for a conviction to lie." *Id.* at 260. And "[c]reating a risk of injury, even when done knowingly or intentionally, is clearly not the same as using or attempting to use physical force . . . ." *Id.* at 261 (citations omitted).

We overrule *Calderon-Pena*'s requirement of bodily contact for a COV. A compelling application of *Castleman* is that physical force "extend[s] to cover those applications of force that are subtle or indirect, rather than only those embracing 'bodily contact.'" *Calderon-Pena*, 383 F.3d at 270 (Smith, J., dissenting). "This is a matter of common sense." *Id.* *Calderon-Pena* is overruled to the extent that it requires bodily contact for a COV and makes a distinction between creating a risk of injury and using or attempting to use physical force.[34]

---

[32] We say nothing in regard to negligent use of force or negligently-caused injury. That is a separate inquiry that is far afield from this case.

[33] We do not decide whether the conviction for intoxication assault, TEX. PEN. CODE § 49.07, is categorically a COV. That issue plainly is not before us. We address, instead, the broader implications of the holdings and reasoning in *Vargas-Duran*.

[34] We make no ruling on whether TEXAS PENAL CODE § 22.041(c) is categorically a COV.

3.

Reyes-Contreras advances the notion that even if we announce—as we now have—that the direct-indirect distinction does not survive *Castleman*, "[a] prior conviction for knowingly assisting another person's self-murder does not satisfy the Guidelines' force clause because it does not require proof, in every case, that the defendant used violent physical force against another person, either directly or indirectly." (Emphasis omitted.) Indeed, in evaluating a conviction, "we must presume that the conviction 'rested upon [nothing] more than the least of th[e] acts' criminalized, and then determine whether even those acts are encompassed by the generic federal offense." *Moncrieffe v. Holder*, 569 U.S. 184, 190−91 (2013) (citation omitted) (quoting *Curtis Johnson*, 559 U.S. at 137). As Justice Sotomayor emphasized for the Court in *Moncrieffe*, however, the "focus on the minimum contact criminalized by the state statute is not an invitation to apply 'legal imagination' to the state offense; there must be 'a realistic probability, not a theoretical possibility, that the State would apply its statute to conduct that falls outside the generic definition of a crime." *Id.* at 191 (quoting *Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 193 (2007)).[35] "[W]ithout supporting state case law, interpreting a state statute's text alone is simply not enough to establish the necessary 'realistic probability.'" *United States v. Castillo-Rivera*, 853 F.3d 218, 223 (5th Cir.) (en banc) (quoting *Duenas-Alvarez*, 549 U.S. at 193), *cert. denied*, 138 S. Ct. 501 (2017).

Reyes-Contreras points to three cases that, he claims, satisfy *Moncrieffe*, *Duenas-Alvarez*, and *Castillo-Rivera*. The first plainly qualifies as "legal

---

[35] Here we would say "the use-of-force clause" instead of "the generic definition of a crime." The same analysis applies to both. In *Duenas-Alvarez*, 549 U.S. at 193, the Court rooted its realistic-probability requirement in the categorical approach itself, not to anything unique to generic-offense clauses. This court applies the "realistic probability" test to use-of-force cases just as it does to generic offenses. *See United States v. Ceron*, 775 F.3d 222, 229 (5th Cir. 2014) (per curiam) (quoting *Duenas-Alvarez*, 549 U.S. at 193).

imagination," and *Duenas-Alvarez* therefore disqualifies it from our analysis. In that case, a "woman took her own life by following instructions posted on the Internet," and a Missouri prosecutor "wanted to pursue voluntary manslaughter charges against the person" who wrote the instructions. But no prosecutor charged anyone, so no Missouri court applied the statute in this manner. Reyes-Contreras has not shown a "realistic probability" that Missouri would apply its assisting-suicide statute to posting suicide instructions on the Internet. That case is therefore irrelevant.

The second and third cases cited by Reyes-Contreras are closer. In one, a man was charged under Subdivision (2) after entering into a suicide pact and providing a gun to his friend. A jury acquitted. In Reyes-Contreras's final example, the defendants provided the necessary instruments—including a plastic bag and orange juice laced with drugs—to a family member who wished to take her own life. *See State v. Howard*, No. CR496-124FX (Mo. Cir. Ct., Newman Cty. 1996). The state court denied a motion to dismiss the indictments. But the state ultimately dropped the charges and gave the defendants a *nolle prosequi*. We need not decide whether either example shows "that [state] courts have *actually applied*" Subdivision (2), however, because even assuming they did, both crimes would ultimately satisfy the use-of-force clause.

The use-of-force clause is satisfied where the state offense "has as an element the use, attempted use, or threatened use of physical force against the person of another." U.S.S.G. § 2L1.2 cmt. 1(B)(iii) (2014). As relevant here, the clause has two key terms: "use" and "physical force." The "knowing or intentional application of [physical] force is a 'use' of force." *Castleman*, 572 U.S. at 170. And "the phrase 'physical force' means *violent* force—that is, force capable of causing physical pain or injury to another person." *Curtis*

*Johnson*, 559 U.S. at 140.  Applying those precedents together, then, a person uses physical force when he knowingly or intentionally applies or employs a force capable of causing physical pain or injury.  And none of this "demand[s] that the person applying force have the purpose or practical certainty that it will cause harm, [but merely] the understanding that it is substantially likely to do so." *Voisine*, 136 S. Ct. at 2279.

In the suicide-pact and orange-juice cases, the defendants knowingly employed deadly instruments (a gun, poison-laced orange juice, and a plastic bag) with the understanding that those instruments were substantially likely to cause physical pain, injury, or (as it turns out) death.  And *Castleman* fore-closes any suggestion that it is not a use of force knowingly to hand poison or a gun to a suicidal person:

> The 'use of force' . . . is not the act of sprinkling the poison; it is the act of employing poison knowingly as a device to cause physical harm. That the harm occurs indirectly, rather than directly (as with a kick or punch), does not matter.  Under Castleman's logic, after all, one could say that pulling the trigger on a gun is not a 'use of force' because it is the bullet, not the trigger, that actually strikes the victim.

*Castleman*, 572 U.S. at 171 (alterations omitted).  To be sure, the defendants in Reyes-Contreras's examples *indirectly* employed force by knowingly handing the deadly instruments to suicidal decedents.  But under *Castleman*, as we have explained, that distinction is irrelevant.[36]

---

[36] It is no answer to say (as Reyes-Contreras does) that "the means by which the person commits suicide are out of the defendant's control when the suicide occurs."  It is true that a defendant cannot be held liable for an unforeseeable or uncontrollable suicide.  *Compare, e.g.*, *Scheffer v. Washington City, V.M. & G.S.R. Co.*, 105 U.S. 249, 252 (1881) (stating that un-foreseeable suicide breaks the chain of causation in a tort suit), *and* RESTATEMENT (SECOND) OF TORTS § 448, *with* 22A AM. JUR. 2D DEATH § 41 (2017) (explaining that "foreseeable" sui-cide can be actionable in tort).  But any concern over foreseeability and control is fully answered by the text of Subdivision (2), which applies only where the defendant "*[k]nowingly* assists another in the commission of self-murder." MO. REV. STAT. § 565.023.1(2) (emphasis added).  In all cases covered by Subdivision (2), the suicide is not only foreseeable but

No. 16-41218

Reyes-Contreras has not shown the requisite "realistic probability."  So even if Missouri assisted suicide is not generic manslaughter—an issue that we decline to decide—we hold in the alternative that it satisfies the Guidelines' requirement of physical force.

## VI.

It is high time for this court to take a mulligan on COVs.  The well-intentioned experiment that launched fifteen years ago has crashed and burned.[37]  By requiring sentencing courts and this court to ignore the specifics of prior convictions well beyond what the categorical approach and Supreme Court precedent instruct, our jurisprudence has proven unworkable and unwise.  By employing the term "crime of violence," Congress and the U.S. Sentencing Commission obviously meant to implement a policy of penalizing felons for past crimes that are, by any reasonable reckoning, "violent," hence the term.

---

foreseen.

[37] And the stakes are high, because U.S.S.G. § 2L1.2 applies as the primary offense-conduct Guideline in about 25 percent of sentences nationwide.  2017 SOURCEBOOK OF FEDERAL SENTENCING STATISTICS tbl.17 (2017), https://www.ussc.gov/sites/default/files/pdf/research-and-publications/annual-reports-and-sourcebooks/2017/Table17.pdf.  Only § 2D1.1—for "Unlawful Manufacturing, Importing, Exporting, or Trafficking" of controlled substances—applies as the primary offense-conduct Guideline more frequently.  *Id.*  Considering the significant share of our docket devoted to sentencing appeals—about 42% of our criminal cases and about 12% of all the cases we decide—our clarification of what counts as a COV provides much-needed, and long-overdue, guidance to prosecutors, criminal defendants, district judges, and probation officers.  *Compare* U.S. COURTS, FEDERAL JUDICIAL CASELOAD STATISTICS 2017 tbl.B-1 (2017), http://www.uscourts.gov/sites/default /files/data_tables/fjcs_b1_0331.2017.pdf (listing total number of cases and of criminal cases in the Fifth Circuit in fiscal year 2017), *with* 2017 SOURCEBOOK OF FEDERAL SENTENCING STATISTICS tbl.55 (2017), https://www .ussc.gov/sites/default/files/pdf/research-and-publications/annual-reports-and-sourcebooks/2017/Table55.pdf (listing the total number of each type of criminal appeals—challenges to the "sentence only," to the "sentence and conviction," to the "conviction only," etc.—in the Fifth Circuit in fiscal year 2017).

No. 16-41218

As with many legal standards, decisions are difficult at the margins. But this case is nowhere near the margin. Except as otherwise directed by the Supreme Court, sentencing should not turn on "reality-defying distinctions." *United States v. Verwiebe*, 874 F.3d 258, 261 (6th Cir. 2017), *cert. denied*, 139 S. Ct. 63 (2018). The interests of justice and Congress's commands are not served by the absurd conclusion that intentionally killing with a baseball bat,[38] and intentionally ramming a vehicle into a car containing a child,[39] are not COVs. A more realistic approach comports with reason and common sense.

In sum, we hold that MISSOURI REVISED STATUTES § 565.023.1 is divisible. Using the modified categorical approach, Reyes-Contreras was convicted under Subdivision (1), which is generic manslaughter, a COV. In the alternative, even if Section 565.023.1 were not divisible, we hold that the statute as a whole is a COV because Subdivision (2) satisfies the use-of-force requirement and thus is independently a COV.

In finding "use of force" for purposes of identifying COVs, the distinction between direct and indirect force is abolished. Likewise for the now-repudiated distinction between causing injury and using direct force. We show that the Missouri assisted-suicide statute satisfies the use-of-force requirement. And we hold that, even if it did not, there is not the realistic probability of enforcement.

---

[38] We remind the reader that Reyes-Contreras was arrested after beating his brother-in-law to death with a bat. A witness saw Reyes-Contreras strike the victim numerous times on the head with an object that appeared to be a stick. Police discovered two shirts near a pool of blood, a piece of scalp with black hair, and a dark baseball bat cracked and stained with blood. "Common sense dictates that murder is categorically a [COV] under the force clause." *In re Irby*, 858 F.3d 231, 237 (4th Cir. 2017) (citing *Abramski v. United States*, 134 S. Ct. 2259, 2267 (2014)).

[39] *See Calderon-Pena*, 383 F.3d at 256.

No. 16-41218

The holdings just announced, true to Supreme Court precedent, are in conflict with numerous panel and en banc decisions of this court. We therefore overrule, in whole or in part, as explained herein, the following decisions and their progeny:

*United States v. Vargas-Duran*, 356 F.3d 598 (5th Cir. 2004) (en banc)

*United States v. Calderon-Pena*, 383 F.3d 254 (5th Cir. 2004) (en banc)

*United States v. Bonilla*, 524 F.3d 647 (5th Cir. 2008)

*United States v. Neri-Hernandes*, 504 F.3d 587 (5th Cir. 2007)

*United States v. Villegas-Hernandez*, 468 F.3d 874 (5th Cir. 2006)

*United States v. Turner*, 349 F.3d 833 (5th Cir. 2003)

*United States v. Rico-Mejia*, 859 F.3d 318 (5th Cir. 2017)

*United States v. Johnson*, 286 F. App'x 155 (5th Cir. 2008)

*United States v. de la Rosa-Hernandez*, 264 F. App'x 446 (5th Cir. 2008)

*United States v. Hernandez-Rodriguez*, 788 F.3d 193 (5th Cir. 2015)

*United States v. Garcia-Perez*, 779 F.3d 278 (5th Cir. 2015)

*United States v. Herrera-Alvarez*, 753 F.3d 132 (5th Cir. 2014)

*United States v. Resendiz-Moreno*, 705 F.3d 203 (5th Cir. 2013)

*United States v. Andino-Ortega*, 608 F.3d 305 (5th Cir. 2010)

*United States v. Garcia*, 470 F.3d 1143 (5th Cir. 2006)

*United States v. Valenzuela*, 389 F.3d 1305 (5th Cir. 2004)

*United States v. Gracia-Cantu*, 302 F.3d 308 (5th Cir. 2002)

*United States v. Chapa-Garza*, 243 F.3d 921 (5th Cir. 2001)

\* \* \* \* \*

Reyes-Contreras's conviction of voluntary manslaughter under MISSOURI REVISED STATUTES § 565.023.1 is a crime of violence that calls for a sixteen-level enhancement under U.S.S.G. § 2L1.2(b)(1)(A)(ii). The judgment of conviction and sentence is AFFIRMED.